**COMMON CAUSE, Appellant,**

v.

**FEDERAL ELECTION COMMISSION, Appellee.**

No. 96–5160.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 22, 1997.

Decided March 21, 1997.

Roger M. Witten, Washington, DC, argued the cause for appellant, with whom A. Stephen Hut, Jr. and Donald J. Simon were on the briefs.

John P. Schnitker, Attorney, United States Department of Justice, Washington, DC, argued the cause for appellee, with whom Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, and Michael J. Singer, Assistant Director, United States Department of Justice, were on the brief.

Before: SILBERMAN and SENTELLE, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

Opinion for the court filed PER CURIAM.

Concurring opinion filed by Circuit Judge SENTELLE.

PER CURIAM:

Common Cause appeals from a grant of summary judgment to the Federal Election Commission ("FEC" or "Commission") upholding the Commission's decision not to prosecute two alleged violations of federal election campaign law. Appellant argues that the district court applied an improper standard of review in considering its challenge to the FEC's decision. We decline to reach the substance of appellant's claim because we conclude that appellant lacks Article III standing.

## I. Background

In July 1990, James K. Addy, the 1988 Democratic candidate from Montana for the United States Senate, filed an administrative complaint with the FEC following Montana's 1988 general election for United States Senator. The complaint alleged that the National Republican Senatorial Committee ("NRSC") and the Montana Republican Party ("MRP") violated federal campaign election law, first, by making contributions and expenditures in excess of the legal contribution limits to the senatorial campaign of Republican candidate Conrad Burns, and, second, by failing accurately to report those contributions and expenditures. In December 1990, Common Cause filed a complaint that contained simi-

lar allegations. The Commission subsequently consolidated these two complaints. The relief requested by the complainants was an investigation of the conduct of NRSC and MRP, a declaration that such conduct was in violation of the Federal Election Campaign Act ("FECA" or "Act"), and the imposition of monetary penalties on NRSC and MRP for such violations.

On July 6, 1994, after an investigation spanning almost four years, the Office of General Counsel recommended that the Commission find probable cause to believe that NRSC and MRP had violated the contribution and expenditure limits and reporting requirements of FECA. On August 2, 1994, the Commission voted 3–2 in favor of finding probable cause on each of the proposed findings. *See Joint Appendix* at 289, 304. Because the Act requires four affirmative votes to act, 2 U.S.C. § 437c(c), these motions failed. The two dissenting Commissioners then proposed finding probable cause on several lesser violations, but their motions failed by votes of 2–3. Given this deadlock, the Commission voted 5–0 to dismiss the complaints and close the matter. Both Common Cause and Addy then filed suit in district court seeking judicial review of the Commission's decision to dismiss their complaint.

A court may not disturb a Commission decision to dismiss a complaint unless the dismissal was based on an "impermissible interpretation of the Act ... or was arbitrary or capricious, or an abuse of discretion." *Orloski v. FEC*, 795 F.2d 156, 161 (D.C.Cir. 1986). On considering the parties' cross-motions for summary judgment, the district court concluded that, under our opinion in *FEC v. National Republican Senatorial Comm.*, 966 F.2d 1471, 1476 (D.C.Cir.1992), when the Commission deadlocks and consequently dismisses a complaint, the "declining-to-go-ahead" Commissioners are a "controlling group" for purposes of the Commission's decision to dismiss the complaint. Dist. Ct. Op. at 4. As a result, the district court concluded that it should accord *Chevron* deference to the statement of reasons provided by the "declining-to-go-ahead" Commissioners. *Id.* Applying this standard of review, the district court granted partial summary

judgment to the FEC, remanding one reporting violation to the Commission, but upholding dismissal of the rest of the complaints. Common Cause appealed that portion of the judgment unfavorable to it.

As Addy did not appeal the decision of the district court, Common Cause alone now challenges the district court's conclusion that deference is owed to the views of the "declining-to-go-ahead" Commissioners when reviewing a Commission decision to dismiss a complaint based on a deadlock. Surprisingly, Common Cause does not challenge the correctness of the district court's decision to uphold the Commission's dismissals, but only the rationale employed by the court—that is, Common Cause argues that the court should have decided the question of law *de novo* rather than deferring to the "declining-to-go-ahead" Commissioners' interpretation. Thus, if we agreed with appellant's argument, we would remand this case to the district court for a *de novo* decision on a pure question of law when the case is before us for *de novo* review of the district court's decision on that very question. Since this strange procedure could result in our remanding a question of law which we might well have held the district court rightly decided in the first place, thus avoiding the whole problem of remand and a possible second appeal, it is difficult to understand appellant's strategic posture. But as we reject the entire appeal on jurisdictional grounds, we need not ponder long the odd posture of appellant's prayer to the court.

■ Neither party addressed standing, either in the district court or in initial briefs to this court. Because "every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it," *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934)), we directed the parties to file supplemental briefs on the issue of standing. In its supplemental brief, Common Cause asserts three alternative theories of standing. First, Common Cause asserts

that it has standing to sue on behalf of its members who voted in the Montana senatorial election and suffered an injury when they were denied "political information" as a result of the failure of NRSC and MRP to comply with the FECA reporting requirements. Second, Common Cause alleges that the organization itself has "informational standing." Finally, Common Cause contends that it has standing simply because "the FEC dismissed its complaint in a manner contrary to law."

In support of its standing arguments, Common Cause cites two cases in which we considered similar challenges the group raised concerning FEC action. *Common Cause v. FEC*, 906 F.2d 705 (D.C.Cir.1990) (per curiam); *Common Cause v. FEC*, 842 F.2d 436 (D.C.Cir.1988). Both of those cases, however, predate the Supreme Court's decision in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Further, neither case "include[d] a ruling on the issue of standing," and thus cannot be considered binding precedent on that issue. *See Allen v. Wright*, 468 U.S. 737, 764, 104 S.Ct. 3315, 3331, 82 L.Ed.2d 556 (1984). We therefore consider the issue of appellant's standing as an open question.

## II. Analysis

Under Article III of the federal Constitution, the "judicial Power of the United States" is vested "in one supreme Court, and in such inferior Courts as the Congress may ... establish." U.S. CONST. art. III, § 1. Over the years, a set of principles often called "justiciability doctrines" have been developed by the courts to more clearly define the scope of the Article III judicial power. *See Allen*, 468 U.S. at 750, 104 S.Ct. at 3324. Among these justiciability doctrines is standing.

In order to have standing to bring a particular suit, a plaintiff must have suffered an (1) "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," (2) which is "fairly traceable" to the challenged act, and (3) "likely" to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61, 112

S.Ct. at 2136–37 (citations and internal quotations omitted). In those cases where "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*" it is substantially more difficult to establish injury in fact, for in such cases "one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.'" *Id.* at 562, 112 S.Ct. at 2137 (quoting *ASARCO Inc. v. Kadish,* 490 U.S. 605, 615, 109 S.Ct. 2037, 2044, 104 L.Ed.2d 696 (1989) (opinion of Kennedy, J.)).

■ These standing requirements apply with no less force to suits brought by organizational plaintiffs. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982). An organizational plaintiff, however, may have standing to sue on its own behalf "to vindicate whatever rights and immunities the association itself may enjoy" or, under proper conditions, to sue on behalf of its members asserting the members' individual rights. *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211–12, 45 L.Ed.2d 343 (1975). In those cases where an organization is suing on its own behalf, it must establish "concrete and demonstrable injury to the organization's activities—with [a] consequent drain on the organization's resources—constitut[ing] ... more than simply a setback to the organization's abstract social interests.... Indeed, [t]he organization must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action." *National Taxpayers Union, Inc. v. United States,* 68 F.3d 1428, 1433 (D.C.Cir.1995) (citations and internal quotations omitted). Where, on the other hand, an organization sues on behalf of its members, the organization must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

Common Cause proposes three separate theories under which it contends we could find organizational standing in this case. First, relying on our opinion in *Akins v. FEC,* 101 F.3d 731 (D.C.Cir.1996) (en banc), Common Cause contends that it has standing to sue on behalf of its members who voted in the Montana senatorial election for the alleged injury to those members' right to "political information." Appellant's Supp. Brief at 4–5. According to Common Cause, both NRSC and MRP violated the reporting and disclosure requirements of FECA, and as a result deprived Common Cause's voting members of vital political information. This deprivation, Common Cause asserts, gives rise to an injury in fact for purposes of standing. Appellant's Supp. Brief at 6–8. In addition, Common Cause asserts "informational standing." *Id.* at 9–11.

As an initial matter, we note that Common Cause has been less than clear in articulating the nature of the information of which its members and the organization itself allegedly have been deprived. This failure is of no small moment, for the nature of the information allegedly withheld is critical to the standing analysis. If the information withheld is simply the fact that a violation of FECA has occurred, neither Common Cause nor its members have suffered the type of injury we recognized in *Akins.*

In *Akins,* several former government officials who were registered voters, politically active, and opposed to the views of the American Israel Public Affairs Committee ("AIPAC") brought suit challenging the FEC's decision that AIPAC was not a "political committee." *Id.* at 733–34. Because AIPAC was not deemed a "political committee," it was not subject to FECA's requirement that such "an organization ... file periodic reports disclosing all receipts and disbursements and identifying each individual to whom it gives or from whom it receives more than $200." *Id.* at 734. Drawing an analogy between the substantive right to information created by the Freedom of Information Act and the congressional intent embodied in FECA that "voters ... have access to the

information political committees [a]re obliged to report," *id.* at 736–37, we held that "[a] voter deprived of useful information at the time he or she votes suffers a particularized injury" sufficient to create standing, *id.* at 737. However, we expressly limited our recognition of this injury to those cases where the information denied is both useful in voting and required by Congress to be disclosed. *Id.*

 Nothing in FECA requires that information concerning a violation of the Act as such be disclosed to the public. Indeed, even if FECA did require such disclosure, we doubt whether this requirement could create standing. To hold that a plaintiff can establish injury in fact merely by alleging that he has been deprived of the knowledge as to whether a violation of the law has occurred would be tantamount to recognizing a justiciable interest in the enforcement of the law. This we cannot do. While "Congress can create a legal right ... the interference with which will create an Article III injury," *id.* at 736, Congress cannot, consistent with Article III, create standing by conferring "upon *all* persons ... an abstract, self-contained, non-instrumental 'right' to have the Executive observe the procedures required by law," *Lujan,* 504 U.S. at 573, 112 S.Ct. at 2143.

 If, on the other hand, Common Cause is asserting an interest in knowing how much money a candidate spent in an election, infringement of such an interest may, under *Akins,* constitute a legally cognizable injury in fact. We need not decide this issue, however, as Common Cause does not claim any violation of such an interest. In its complaint filed with the FEC, Common Cause primarily alleged that both NRSC and MRP had violated FECA's contribution and expenditure limits. To be sure, Common Cause also alleged that NRSC and MRP violated FECA reporting requirements. But that allegation was nominal at best. In the thirteen paragraphs detailing the statutory and regulatory provisions applicable to this case, only one such paragraph makes any reference to the FECA reporting requirements. More importantly, the relief requested by Common Cause consisted entirely of the investigation and imposition of monetary penalties against

NRSC and MRP. In other words, what Common Cause desires is for the Commission to "get the bad guys," rather than disclose information. Common Cause has no standing to sue for such relief.

Common Cause further contends that it "suffered particularized injury when the FEC dismissed its complaint in a manner contrary to law." Appellant's Supp. Brief at 11. FECA provides that "[a]ny person" who believes that a violation of the Act has occurred "may file a complaint with the Commission." 2 U.S.C. § 437g(a)(1). Thereafter, "[a]ny party aggrieved by an order of the Commission dismissing a complaint filed by such party" may seek judicial review in the United States District Court for the District of Columbia, *id.* § 437g(a)(8)(A), which may declare the dismissal or failure to act to be "contrary to law" and remand for further consideration by the FEC, *id.* § 437g(a)(8)(C).

According to Common Cause, these provisions embody "a statutory promise to the complainant that the FEC [will] act on a complaint in a reasonable period of time and [will] do so in a manner not 'contrary to law.'" When the FEC violates the complainant's right to a prompt and lawful resolution of the complaint, the Commission "deprives the complainant of a statutorily promised benefit that is personal to the complainant." Appellant's Supp. Brief at 12.

Appellant's asserted injury parallels the "'procedural injury'" the Supreme Court held insufficient in *Lujan.* At issue in *Lujan* was a "citizen-suit" provision of the Endangered Species Act which provided that "'any person [could] commence a civil suit on his own behalf to enjoin any person, including the United States and any other governmental ... agency ... who is alleged to be in violation of any provision of this chapter.'" 504 U.S. at 571–72, 112 S.Ct. at 2142 (quoting 16 U.S.C. § 1540(g)). The Supreme Court held that this provision could not satisfy the Article III injury in fact requirement in those cases where an individual was otherwise unable "to allege any discrete injury flowing from" the violation of the Act. *Id.* at 572, 112 S.Ct. at 2142.

In this case, Common Cause argues that § 437g(a) of FECA—a provision similar to the "citizen-suit" provision in *Lujan*—confers on "any person" who believes that FECA has been violated, a right to seek judicial review in federal court. Section 437g(a)(8)(A) does not confer standing; it confers a right to sue upon parties who otherwise already have standing. As in *Lujan*, absent the ability to demonstrate a "discrete injury" flowing from the alleged violation of FECA, Common Cause cannot establish standing merely by asserting that the FEC failed to process its complaint in accordance with law. To hold otherwise would be to recognize a justiciable interest in having the Executive Branch act in a lawful manner. This, the Supreme Court held in *Lujan*, is not a legally cognizable interest for purposes of standing. *Lujan*, 504 U.S. at 573, 112 S.Ct. at 2143.

### III. Conclusion

Common Cause has failed to demonstrate that it has suffered a legally cognizable injury as a result of the FEC's dismissal of its complaint.[1] We therefore dismiss appellant's claim for lack of standing.

SENTELLE, Circuit Judge, concurring:

I write separately to add to the court's rejection of Common Cause's standing for lack of injury in fact my separate view that their standing argument also fails for want of redressability. Even if we could construe the complaint in this action as asserting a claim of deprivation of statutorily required information of the sort we upheld in *Akins*, Common Cause would still lack standing. As Common Cause is seeking, not an order of the Commission requiring or releasing such information, but only prosecution, it still lacks the third element listed in *Lujan*; that is, redressability.

If the injury alleged were the cognizable deprivation of information upheld in *Akins*,

administrative discipline of the alleged wrongdoers would not remedy that injury. Any redress for plaintiffs would be entirely dependent "on the unfettered choices made by independent actors not before the courts," *Lujan*, 504 U.S. at 562, 112 S.Ct. at 2137, namely NRSC and MRP. Even were I to assume that NRSC or MRP might engage in conduct during future senatorial campaigns that would unlawfully deprive Common Cause members of information relevant to such campaigns, *cf. Golden v. Zwickler*, 394 U.S. 103, 109–10, 89 S.Ct. 956, 960–61, 22 L.Ed.2d 113 (1969) (finding a claim nonjusticiable when it was unlikely that a particular congressman would run again for Congress), there is simply no guarantee that the imposition of monetary penalties against NRSC and MRP would result in compliance with FECA's reporting and disclosure requirements in such future elections. Both NRSC and MRP might well decide to absorb the monetary penalties rather than disclose the required information. *Cf. Linda R.S. v. Richard D.*, 410 U.S. 614, 618, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973) (holding that a parent lacks standing to challenge a state's decision not to enforce a child support statute against the other parent given that it is "only speculative" whether prosecuting the other parent would result in payment of the support due).

For this reason courts have long held that no standing exists "where a complainant challenges only an Executive Branch decision not to impose costs or penalties upon some third party." *Branton v. Federal Communications Comm'n*, 993 F.2d 906, 910–11 (D.C.Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1610, 128 L.Ed.2d 338 (1994). Common Cause seeks no relief paralleling the relief sought in *Akins*. Common Cause does not request that the FEC order NRSC and MRP to comply with FECA's disclosure and reporting requirements either currently or in future campaigns. Because no such

---

1. We note that it is again unnecessary to resolve the thorny issue of "political competitor" standing left open in *Akins*. *See* 101 F.3d at 738. Common Cause is a "non-partisan" organization, Appellant's Brief at iii, and thus is likely not a political competitor of either NRSC or MRP. Indeed, Common Cause does not even assert a

"political competitor" theory of standing in this case. While Addy may be a political competitor of NRSC and MRP, he has not appealed the decision of the district court. We therefore decline to address the "political competitor" standing issue.

request has been made, I easily conclude that appellant does not have standing of the sort recognized in *Akins*.

Common Cause also asserts "informational standing" to sue on behalf of its members. *See Akins*, 101 F.3d at 735. Informational standing is a "narrowly defined" theory of standing under which a plaintiff must demonstrate that the government's failure to provide information to the public "impinge[s] on the plaintiff's daily operations or make[s] normal operations infeasible." *Id.* Even in that narrow class of cases where a plaintiff can demonstrate that the government's failure to provide information to the public has sufficiently impinged on the organization's daily operations, the plaintiff must still demonstrate that the relief requested is competent to redress the alleged informational injury. Generally, this redressability requirement can be satisfied by requesting that the wrongfully withheld information be disclosed.

At the risk of belaboring the point, the relief requested in Common Cause's complaint is not the release of information, but the imposition of monetary penalties on NRSC and MRP. Assuming *arguendo* that the alleged failure of NRSC and MRP to disclose required information impeded the *daily operations of Common Cause, I fail to see how the imposition of monetary penalties—as opposed to an order requiring disclosure of required information—will or can redress the purported injury to Common Cause's operations. See Branton,* 993 F.2d at 910–11. Thus, Common Cause has also failed to establish informational standing by reason of a failure of redressability.