**JUDICIAL WATCH, INC., Plaintiff,**

v.

**FEDERAL ELECTION COMMISSION,**
**Defendant.**

No. Civ.A. 98–00386 (SS).

United States District Court,
District of Columbia.

July 6, 1998.

Larry Elliot Klayman, Klayman & Associates, P.C., Washington, DC, for Plaintiff.

Lawrence Mark Noble, Washington, DC, for Defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter is before the Court on (1) Defendant's motion to dismiss, or, in the alternative, for summary judgment; and (2) Defendant's motion for sanctions under Rule 11. Plaintiff, Judicial Watch, Inc., is a non-profit legal watch-dog organization. Judicial Watch describes its purpose as obtaining and publishing information that exposes government activities that are contrary to law. On August 26, 1996, approximately ten weeks before the 1996 elections, Judicial Watch brought an administrative complaint before the Defendant Federal Election Commission ("FEC"). The complaint was entitled "Complaint for Violation of Campaign Finance Laws and Regulations." It named as respondents the Clinton Administration, the White House, the Democratic National Committee ("DNC"), the Department of Commerce, and President Clinton. The complaint alleged:

> Respondents have sold government services and specifically seats and assistance on [Department of Commerce] foreign trade missions, for large campaign contributions, frequently in denominations of $100,000, to the Democratic National Committee and the Clinton/Gore . Reelection Campaign.

Inexplicably, the FEC waited over a year and a half before determining whether to investigate Plaintiff's allegations. On December 15, 1997, the FEC declined to take any action on Plaintiff's complaint, stating: "In light of the information on the record, the relative significance of the case, and the amount of time that had elapsed, the Commission determined to close its file in this matter on December 15, 1997." Letter to Mr. Klyaman from the Federal Election Commission (December 15, 1997).

Plaintiff brought this action under 2 U.S.C. § 437g(a)(8)(A) (1998) in District Court chal-

lenging the FEC's decision to take no action on its complaint. Judicial Watch seeks a declaratory judgment that the FEC's dismissal of its administrative complaint was contrary to law. Additionally, Judicial Watch seeks an order that the FEC conform its conduct to the law.

## I. Standing

The FEC moves the Court to dismiss this case because it claims that the Plaintiff lacks standing to bring this lawsuit. The FEC claims that *Common Cause v. Federal Election Commission,* 108 F.3d 413 (D.C.Cir. 1997) is dispositive on the lack of Plaintiff's standing and that the Plaintiff should be subjected to sanctions for bringing this action.

■ Under the Federal Election Campaign Act of 1971 ("FECA"), any person who believes that a violation of the Act occurred may file a complaint with the FEC. *See* 2 U.S.C. § 437g(a)(1) (1998). After reviewing the complaint, the Commission may vote on whether there is "reason to believe" that a violation of the FECA has occurred. *See* 2 U.S.C. § 437g(a)(2) (1998). If at least four members of the Commission find that there is reason to believe that there has been a violation, then the Commission "shall make an investigation of [the] alleged violation." 2 U.S.C. § 437g(a)(3). If the Commission determines that no violations occurred or decides to dismiss the administrative complaint for some other reason, the complainant can seek judicial review of that determination in District Court under 2 U.S.C. § 437g(a)(8)(A). "Section 437g(a)(8)(A) does not confer standing; it confers a right to sue upon parties who otherwise already have standing. As in *Lujan,* absent the ability to demonstrate a 'discrete injury' flowing from the alleged violation of FECA, [a plaintiff] cannot establish standing merely by asserting that the FEC failed to process its complaint in accordance of law." *Common Cause,* 108 F.3d at 418.

■ To establish standing under Article III, Plaintiff must establish: (1) that it suffered an "injury in fact"; (2) that "there must be a causal connection between the injury and the conduct complained of"; and (3) that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). An organization, such as Judicial Watch, may sue on behalf of its members where: (a) the members would otherwise have standing to sue in their own right; (b) the interests the organization seeks to protect are germane to the organization's purpose; and (c) neither the claims asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

■ The FEC claims that Plaintiff has failed to allege an injury. However, recently, in *Federal Election Commission v. Akins,* ⎯ U.S. ⎯, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998), the Supreme Court held that an injury was created when a plaintiff "fails to obtain information that must be publicly disclosed pursuant to a statute" is sufficiently concrete to constitute an "injury in fact" for the purposes of standing. *Id.* at 1784. Affected voters have standing to sue the FEC for failure to obtain information that it is required to gather. Depriving voters of information that the sale of seats on the Commerce trade missions in exchange for contributions to the DNC and the 1996 Clinton/Gore Reelection campaign is important and useful to voters.

■ The FEC also claims that the Plaintiff lacks standing because the Plaintiff has not specifically alleged in its administrative complaint that the Clinton/Gore Reelection Campaign or the DNC violated the FECA. FEC regulations provide that the complaint "should contain a clear and concise recitation of the facts which describe a violation of a statute or regulation over which the Commission has jurisdiction." 11 C.F.R. § 111.4(d)(3) (1998). The FEC asserts that the FECA concerns only reporting violations, not bribery, and that it does not have jurisdiction over quid pro quo violations. The FEC claims that the Plaintiff never alleged a failure to report information as part of its administrative complaint before the FEC. The FEC relies upon this Circuit's decision

in *Common Cause*, which held that the Plaintiff had no standing to sue for illegal actions that did not involve the failure to disclose information as required by the FECA: "[W]hat Common Cause desires is for the Commission to 'get the bad guys,' rather than disclose information. Common Cause has no standing to sue for such relief." *Common Cause*, 108 F.3d at 418. In short, the FEC argues that the Plaintiff failed to state a theory under which its allegations of selling seats on foreign trade missions for campaign contributions would involve the failure to report information, and hence, be a violation the FECA.

 However, the Plaintiff is not required to supply the FEC with a legal theory under the FECA to pursue its allegations. At minimum, the FEC, as an agency acting in the public interest, should not interpret complaints narrowly. *See Federal Election Commission v. Franklin*, 718 F.Supp. 1272, 1278 (E.D.Va.1989) ("While the complaint does not present a complete factual and legal account of a violation of the FECA by the unknown respondent, such an account is not required."). Indeed, the FEC ignored its own regulations, which state that

> If a complaint does not comply with the requirements of 11 C.F.R. § 111.4, the General Counsel shall so notify the complainant and any person(s) or entity(ies) identified therein as respondent(s) within the five (5) day period specified in 11 C.F.R. § 111.5(a), that no action shall be taken on the basis of that complaint.

11 C.F.R. § 111.5 (1998). The FEC did not notify the Plaintiff that the complaint was defective. Instead, the FEC waited a year and a half before dismissing it. It is only now that the FEC claims that it took no action on the complaint because it failed to meet technical requirements.

In this case, the FEC had before it serious allegations backed up with documentation and sworn testimony. At the very least, the FEC should have given the Plaintiff's complaint careful consideration. If after such a consideration, the allegations were not within its prosecutorial jurisdiction, the FEC should

have referred the matter to the Department of Justice or the appropriate agency. This is not a case where the allegations were trivial or unfounded. While this Court does not reach the merits of Plaintiff's allegations, the Court finds that they should not have been discarded on such a narrow reading of Plaintiff's complaint. By focusing on the technicalities, the FEC failed to look at the substance of the Plaintiff's allegations.

In this case, there are potential violations of the FECA that are easily inferred from Plaintiff's allegations. Title 2 U.S.C. §§ 432 and 434 (1998) provide that political committees maintain detailed records of the contributions they receive and the disbursements they make, as well as file detailed reports reflecting these contributions and disbursements. Such disclosure provides voters with information "as to where political campaign money comes from and how it is spent by the candidate in order to aid the voters in evaluating those who seek federal office, deters actual corruption and the appearance of corruption, and helps the public detect post-election quid pro quo." *Buckley v. Valeo*, 424 U.S. 1, 66–67, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The Federal Election Campaign Act, as well as the FEC's own regulations, require that political committees include in their reports to the FEC any "disbursement" over $200 and all "contribution refunds" or other "offsets to contributions." 2 U.S.C. § 434(b); 11 C.F.R. § 104.3. A seat on the U.S. Department of Commerce Trade mission obtained in exchange for a campaign contribution could be classified as an "offset" to a contribution, a "refund" of a contribution, or a direct "disbursement" exceeding $200 in value. Thus, the DNC and the Clinton/Gore 1996 Reelection committee may have had an obligation to report these alleged quids pro quo to the FEC.

For some reason, the FEC is attempting to thwart a review of these charges by alleging a procedural deficiency to Plaintiff's standing. This tactic simply cannot work. Accordingly, the Court concludes that the Plaintiff has standing to bring this case.[1]

---

1. Defendant's motion for sanctions is premised on the fact that Plaintiff lacks any legal basis for

standing. Because the Court concludes other-

## II. The FEC's Decision on Plaintiff's Complaint

■ Title 2 U.S.C. § 437g(a)(8)(A) provides:

Any party aggrieved by an order of the Commission dismissing a complaint filed by such party under paragraph (1), or by a failure of the Commission to act on such complaint during the 120–day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia.

When reviewing the FEC's dismissal of a complaint, "the court may declare that the dismissal of the complaint or the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint." 2 U.S.C. § 437g(a)(8)(C).

The FEC claims that it is premature for this Court to remand the case to the FEC because the Plaintiff has not filed a motion for summary judgment. However, a court may enter summary judgment, *sua sponte*, in favor of a party opposing summary judgment, even if, as in this case, that party has not made a formal cross-motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leahy v. District of Columbia*, 833 F.2d 1046, 1047 (D.C.Cir.1987). The critical question for the Court is whether the losing party was "on notice" that it needed to "come forward with all of [its] evidence." *Celotex*, 477 U.S. at 326, 106 S.Ct. 2548. To be on notice "does not mean that [the defendant] had to receive a formal document called 'notice' or that the district court had to say the words 'you are on notice' or even that the court had to explicitly tell [the defendant], 'I am thinking of ordering summary judgment for [the plaintiff] sua sponte.'" *National Expositions, Inc. v. Crowley Maritime Corp.*, 824 F.2d 131, 133 (1st Cir.1987). Rather, the question is whether, given the particular procedural posture of the case, the defendant had the opportunity to demonstrate that there was a genuine issue of material fact

and its opponent was not entitled to judgment as a matter of law.

At the June 22, 1998 hearing on the FEC's motion for summary judgment, the Court raised the issue of whether a remand would be appropriate at this time. On June 24, 1998, the FEC filed a post-hearing memorandum, stating that remand would be premature. The FEC claims that, if given the opportunity to present evidence in this case, it will demonstrate that

the Commission is overwhelmed by a backlog of administrative complaints and is chronically understaffed. For that reason, several years ago it instituted a formal method, called the Enforcement Priority System, to rate the relative importance of resource demands of incoming administrative complaints. In the exercise of its prosecutorial discretion, the Commission relies on its Enforcement Priority System and is forced to dismiss dozens of administrative complaints each year without ever having the opportunity to investigate their allegations. Judicial Watch's complaint was just one of those many administrative complaints that were dismissed in 1997 because of a lack of resources.

Defendant's Post–Hearing Memorandum (June 24, 1998), at 2.

The Court finds that remand is appropriate in this case. The actions of the FEC in this case are inexplicable. The Plaintiff alleged serious violations of law. After waiting for a year and a half, the FEC summarily dismissed the Plaintiff's complaint without adequate explanation. The FEC has attempted, through its motion for summary judgment and post-hearing memorandum, to introduce explanations that were not provided to the Plaintiff at the administrative level. Further, the FEC now seeks to introduce facts before this Court that were not presented in the administrative record. All of the issues that the FEC raises before this Court should have been first raised in the administrative proceeding. This Court believes that the FEC must fully consider the Plaintiff's complaint and must provide an adequate justification if it decides to dismiss

wise, it will deny Defendant's motion for sanctions.

the complaint. Any further proceedings in this Court should await appropriate administrative action.[2]

---

2. The Plaintiff urges the Court to order the FEC to require the DNC and the 1996 Clinton/Gore Reelection Campaign to report information about the alleged quid pro quo violations. However, such an order would be premature. Neither the DNC nor the Clinton/Gore Reelection Campaign have had an opportunity to respond to Plaintiff's allegations. The FEC must first investigate whether or not the DNC or the Clinton/Gore Reelection Campaign failed to meet the FECA reporting requirements.