**JUDICIAL WATCH, INC., et al., Plaintiffs,**

**v.**

**FEDERAL ELECTION COMMISSION, Defendant.**

**No. CIV. 01–2527(RJL).**

United States District Court, District of Columbia.

Aug. 30, 2003.

Larry Elliot Klayman, Lead Atty., Judicial Watch, Inc., Washington, DC, for Judicial Watch, Inc., Peter F. Paul.

Lawrence Howard Norton, Leigh Gipson Hildebrand, Richard Blair Bader, Stephen E. Hershkowitz, William S. Shackelford, Lead Attys., Federal Election Com'n, Washington, DC, for Federal Election Com'n.

### MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Plaintiffs Judicial Watch, Inc., ("Judicial Watch") and Peter Paul ("Mr. Paul," "Paul") bring this action against the Federal Election Commission ("Commission," "FEC"), claiming that the Commission has failed to respond to or investigate the administrative complaint filed by Mr. Paul with the Commission within the 120 days provided by statute. According to the plaintiffs, the Commission's failure to do so has resulted in "informational injury" to both Mr. Paul and Judicial Watch, as they have been deprived of information they sought when the administrative complaint was filed.

The Commission has filed a motion for summary judgment, now fully briefed. For the reasons stated below, the Court agrees, and grants the Commission's motion for summary judgment and dismisses the instant action with prejudice.

## I. Background

Plaintiff Judicial Watch is a non-profit legal organization, and states that its purpose is to "educate, stimulate, and inform public discussion about important issues of public policy." Mr. Paul was a Hollywood executive and partner in Stan Lee Media, Inc., a global entertainment company. He is currently a fugitive from criminal charges pending in the United States District Court for the Eastern District of New York, and is in Brazilian custody.

On August 12, 2000, Mr. Paul produced a "Hollywood Tribute to the President," a fundraiser for the DNC and a tribute to President Clinton, and donated significant amounts to the Democratic National Committee (DNC) on a number of occasions. Mr. Paul claims that he fronted $1.9 million of the cost of the "Hollywood Tribute" fundraiser, and that this amount represented contributions both in cash and in kind to Senator Hillary Rodham Clinton's New York Senatorial campaign committee. Moreover, he asserts in his Commission complaint that he made these contributions with the intention of "influencing the outcome" of the New York Senate election.[1] Mr. Paul also claims that funds raised at the "Hollywood Tribute" event went directly to Senator Clinton's campaign committee, rather than the DNC.

In addition, Paul directly contributed $2,000 to Hillary Rodham Clinton's Senatorial Campaign Committee, although his donation was ultimately returned.[2] Senator Clinton's Commission reports note

---

1. See Pls.'s Compl., Ex. 1, p. 5.

2. Exhibit 3 to Mr. Paul's Complaint is a copy of an article in the Washington Post, dated August 17, 2000, regarding Senator Clinton's returning Mr. Paul's $2,000 donation to her campaign. The article quotes Howard Wolfson's (Senator Clinton's spokesman) statement that the check was returned, although the article does not explain why the check was returned.

both the donation, and the return of it, to Mr. Paul.

On July 16, 2001, Mr. Paul, with the assistance of his counsel, Judicial Watch, filed an administrative complaint with the Commission.[3] In the Commission complaint, Mr. Paul alleges that Senator Clinton's campaign committee failed to report approximately two million dollars in cash and in-kind contributions from Mr. Paul, made in connection with the "Hollywood Tribute" fundraiser, in violation of federal election law. Mr. Paul, therefore, requested that the Commission investigate these charges. Mr. Paul claims that he was concerned that he would become the subject of a future Commission investigation due to Senator Clinton's alleged reporting discrepancies, and that he filed the complaint proactively in order to "clear the air."

As of December 7, 2001, the day Mr. Paul and Judicial Watch filed their complaint in this Court, the Commission had not responded to their administrative complaint. Plaintiffs claim that the Commission is required by 2 U.S.C. § 437g(a)(8)(A) to act on all complaints within 120 days of filing, and that the Commission failed to do so here. That 120–day statutory period, according to plaintiffs, expired on December 3, 2001, four days before plaintiffs filed in this Court.

Defendant Commission has filed a motion for summary judgment arguing, in essence, that the plaintiffs lack Article III standing to bring the instant action. If the Court determines that plaintiffs have satisfied the standing requirement, the Commission argues that Paul is nonetheless precluded from bringing suit under the fugitive disentitlement doctrine because he is a fugitive from justice from charges pending in federal court in New York. The Commission further argues that Judicial Watch is precluded from seeking relief here because it was not a party to the administrative claim, a prerequisite to seeking judicial relief from an administrative action.

## II. The Commission's Motion for Summary Judgment

Summary judgment is appropriate under Federal Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). All evidence presented must be construed in favor of the nonmoving party, here, the plaintiff. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

To determine which facts are material, the Court must examine the substantive law underlying the claim. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense, thereby affecting the outcome of the action. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### A. Judicial Watch Was Not a Party to the Administrative Complaint

■ Judicial Watch seeks relief in this Court for the Commission's failure to act on Paul's administrative complaint pursuant to 2 U.S.C. § 437g(a)(8)(A). Section 437g(a)(8)(A) of provides that "[a]ny *party*

---

**3.** In the instant action, the parties dispute whether Judicial Watch was a party to the administrative complaint. This matter is discussed *infra.*

aggrieved by an order of the Commission dismissing a complaint filed by *such party* ... or by the failure of the Commission to act on such complaint during the 120–day period ... may file a petition with the United States District Court for the District of Columbia." (emphasis added). While the statute provides for judicial relief from Commission administrative actions, the plain language of the statute makes clear that it is only available to parties to the administrative complaint.

Mr. Paul is the only person listed as a party to the Commission complaint, dated July 16, 2001.[4] In the Commission complaint, which is printed on Judicial Watch letterhead, Judicial Watch identifies Mr. Paul as its "client," and states that *"Mr. Peter F. Paul,* in the public interest, and based upon his personal knowledge, complains to the Federal Election Commission ...."[5] Nowhere does the complaint mention that Judicial Watch is a co-complainant. Moreover, pursuant to 2 U.S.C. § 437g(a)(1), the administrative complaint must be "signed and sworn to by the person filing such complaint"; Mr. Paul is the only party who signed the complaint. In a subsequent letter dated August 3, 2001, from Judicial Watch to the Commission, Judicial Watch again identifies Mr. Paul as "[o]ur client" and refers to the complaint before the Commission as the "Peter F. Paul Complaint."[6] As with the complaint, in the August 3, 2001 letter, Judicial Watch does not refer to itself as a party to the complaint, but only as counsel to Mr. Paul.

Judicial Watch contends that this argument is mere "form over substance." Judicial Watch claims that it identified itself as a co-complainant before it stated that Mr. Paul was a party to the complaint; the language of the complaint, however, does not support Judicial Watch's argument. While the introduction section of the administrative complaint describes Judicial Watch as a "non-profit, public interest law firm," only Mr. Paul is mentioned as the party who "complains" to the Commission against Senator Clinton and various other individuals associated with her U.S. Senate campaign. In the August 3, 2001 letter, Judicial Watch refers to the Commission complaint as the "Peter F. Paul Complaint," not the "Judicial Watch and Peter F. Paul Complaint." Further, Judicial Watch argues that it never stated it was *not* a party to the administrative complaint; while this may be true, this argument crumbles in light of the fact that Judicial Watch never explicitly identified itself as a administrative party, but only as counsel to Mr. Paul.

All evidence before the Court indicates that Judicial Watch only acted as counsel, not a party, to the underlying administrative complaint and, as such, is not entitled to seek judicial relief here. Judicial Watch's claims, therefore, are dismissed with prejudice.

### B. Mr. Paul Lacks Standing to Seek Judicial Relief

The Commission argues that summary judgment must be granted against Mr. Paul because (1) Mr. Paul is precluded from seeking relief because he has suffered no injury, and therefore lacks standing, and (2) Mr. Paul is not entitled to seek relief from this Court under the fugitive disentitlement doctrine. Because the Court concludes that Mr. Paul has not suffered a concrete and particularized injury cognizable by this Court, and therefore lacks standing, it does not need to address

---

**4.** *See* Pls.'s Compl., Ex. 1.

**5.** *Id.*

**6.** *See* Def.'s Mot. for Summ. J., Ex. 2.

the Commission's argument regarding the fugitive disentitlement doctrine. Accordingly, the Court also grants the Commission's motion for summary judgment as to Mr. Paul.[7]

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In *Lujan*, the Supreme Court set forth the three elements that, as a "constitutional minimum," must be demonstrated to satisfy the Article III standing requirement: (1) plaintiff must suffer an "injury in fact," that is, invasion of an interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury must be "fairly traceable" to the conduct plaintiff challenges, and (3) it must be "likely ... that the injury will be redressed by a favorable decision." *Id.* at 560–61, 112 S.Ct. 2130 (citations omitted).

Here, Mr. Paul claims that he has suffered "informational injury" that amounts to an "injury in fact," because the Commission has not informed him of the results of its investigation into Senator Clinton's alleged reporting violations within the 120–day statutory period. In effect, Mr. Paul is arguing that he has suffered injury in fact in three different ways: (1) that he has been, and continues to be, deprived of information uncovered during the FEC investigation of his administrative complaint regarding Senator Clinton's alleged campaign finance reporting violations as they pertain to Mr. Paul's contributions; (2) that he may be, in the future, a potential defendant in a FEC investigation of Senator Clinton's alleged reporting violations, and he has been deprived of information

from the investigation of his administrative complaint that would assist in his defense; and (3) the FEC's delay in acting on his administrative complaint within the 120–day statutory period constitutes, in and of itself, injury in fact to Mr. Paul.

In *Common Cause v. FEC*, this Circuit emphasized that the *nature* of the information withheld is "critical to the standing analysis." 108 F.3d 413, 417 (D.C.Cir.1997). "Informational injury," that injury caused when voters are deprived of useful political information at the time of voting, is a "particularized injury sufficient to create standing" if the denied information is "useful in voting and required by Congress to be disclosed." *Id.* at 418 (citation omitted). Such an injury occurs when a voter is deprived of information showing how much money a candidate spent during an election, or the identity of donors to a candidate's campaign, because both types of information are useful in voting and are required by Congress to be disclosed. The court in *Common Cause* distinguished that type of injury, which creates Article III standing, from an injury that occurs when a person is deprived of information that a law has been violated. According to the court, "[i]f the information withheld is simply the fact that a violation of FECA has occurred," the plaintiff has not suffered the type of injury that satisfies the standing requirement. *Common Cause* at 418. As the D.C. Circuit noted, concluding that such an injury created standing "would be tantamount to recognizing a justiciable interest in the enforcement of the law." *Id.*

A review of Mr. Paul's administrative complaint to the Commission shows that

---

7. Although the Court finds that Judicial Watch's claims should be dismissed with prejudice because Judicial Watch was not a party to the administrative complaint, *see supra*, the Court also concludes that Judicial Watch in any event lacks standing to bring this action for the same reasons Paul lacks standing.

the relief Mr. Paul seeks is an investigation of Senator Clinton's campaign and its reporting. Mr. Paul admits as much when he states in his administrative complaint that the Commission was "obligated to investigate false and misleading reporting by Senator Hillary Rodham Clinton, her campaign, and related committees *concerning Mr. Paul's contributions.*" (emphasis added). Mr. Paul and Judicial Watch also argue in their opposition to the Commission's motion for summary judgment that "[w]hat Judicial Watch ultimately is seeking [is] *the information resulting from a thorough and complete investigation* of Mr. Paul's allegations." Pls.'s Opp'n at 4 (emphasis in original). However, since Mr. Paul is already aware of the facts underlying his own alleged contributions to Senator Clinton's campaign,[8] and since it appears unlikely that Mr. Paul's administrative complaint will yield additional facts about Senator Clinton's alleged reporting violations that Mr. Paul was not already aware of when he filed the administrative complaint,[9] what Mr. Paul is really seeking is a legal determination by the Commission that the money he spent producing the Hollywood Tribute represented contributions to Senator Clinton's campaign, and that Senator Clinton's failure to report those contributions is a violation of the

FECA. In short, Mr. Paul seeks a finding by the Commission as to whether Senator Clinton violated the FECA. As this Circuit so aptly put it in *Common Cause,* what plaintiff desires "is for the [Commission] to 'get the bad guys,' rather than disclose information." 108 F.3d at 418. Mr. Paul does not have a justiciable interest in the enforcement of the law. Therefore, Mr. Paul's alleged "informational injury" is not cognizable injury under FECA, sufficient to satisfy the standing requirement.[10]

██ Mr. Paul advances a second argument as to how he has suffered injury in fact due to the Commissions' failure to investigate his administrative complaint that is similarly untenable. According to Mr. Paul, he believes he may be a potential defendant in a future investigation by the Commission of Senator Clinton's campaign finance reporting. The Commission's failure to investigate his complaint and provide him with information regarding Senator Clinton's campaign finance reporting, he contends, leaves his liberty and property at risk, because he is unable to amass information for his defense. This purported injury, however, is speculative at best. As the Supreme Court stated in *Lujan,* an injury that satisfies the Article III standing requirement must be "actual or immi-

---

8. Mr. Paul includes as exhibits to his complaint filed in this Court pages upon pages of photocopies of checks that he wrote to various vendors for the "Hollywood Tribute" fundraiser. *See* Pls.'s Compl., Ex. 4. It is those funds that Mr. Paul claims are, in fact, contributions to Senator Clinton's campaigns, that Senator Clinton allegedly failed to disclose to the Commission in her campaign finance reports.

9. *See Wertheimer, et al. v. Federal Election Commission,* 268 F.3d 1070, 1074–75 (D.C.Cir.2001) (holding that plaintiffs did not suffer cognizable injury under FECA because plaintiffs "do not really seek additional facts" but only "a legal characterization or duplicative reporting of information that under exist-

ing rules is already required to be disclosed.").

10. Only in two instances did the court in *Common Cause* recognize an injury caused by the deprivation of useful information to a voter that was sufficient to create Article II standing: when the information denied "is both useful in voting and required by Congress to be disclosed." *Common Cause,* 108 F.3d at 418. In situations like the case at bar, Congress does not require the information that Mr. Paul seeks to be disclosed. *See id.* (noting that "[n]othing in FECA requires that information concerning a violation of the Act as such be disclosed to the public.").

nent." *Id.* at 560–61, 112 S.Ct. 2130. Mr. Paul has put forth no evidence that an investigation of his contributions is ongoing; he merely states that one is *possible.* Future, speculative injury does not satisfy the test for standing as articulated by the Supreme Court in *Lujan.* Therefore, Mr. Paul has not suffered an injury in fact by being deprived of information that *may* assist his defense in a *possible* FEC investigation.

■ Finally, Mr. Paul appears to claim that the Commission's delay in responding to his claim is, in and of itself, an injury in fact. Under 2 U.S.C. § 437g(a)(8)(A), "[a]ny party aggrieved ... by the failure of the Commission to act on such complaint during the 120–day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia." While this argument was not specifically set forth in plaintiffs' papers, it became clear to the Court during oral argument that Mr. Paul believes that the Commission's delay in acting on his administrative complaint is also an injury in fact, separate from informational injury. The Court finds no basis in the law for this position.

In effect, Mr. Paul's argument is that the Commission's delinquency in acting on their complaint deprived them of the benefit of FECA's timetable for processing complaints. In *Common Cause v. FEC,* a similar situation was presented. Common Cause, the plaintiff, argued that the Commission's dismissal of its administrative complaint was in a manner "contrary to law." 108 F.3d at 418. According to Common Cause, 2 U.S.C. § 437g(a)(8)(A) embodied a

> statutory promise to the complainant that the FEC [will] act on a complaint in a reasonable period of time and [will] do so in a manner not 'contrary to law.' When the FEC violates the complain-

ant's right to a prompt and lawful resolution of the complaint, the Commission "deprives the complainant of a statutorily promised benefit that is personal to the complainant."

*Common Cause,* 108 F.3d at 418 (quoting Common Cause's supplemental brief). The Circuit, however, rejected Common Cause's argument, finding that its "asserted injury parallels the 'procedural injury' the Supreme Court held insufficient in *Lujan.*" *Id.* The court made clear that while the FEC's failure act within the 120–day period of 2 U.S.C. § 437g(a)(8)(A) conferred *a right to sue,* it did not also confer standing. *See Common Cause,* 108 F.3d at 419 (stating that 2 U.S.C. § 437g(a)(8)(A) "confers a right to sue upon parties *who otherwise already have standing.*" (emphasis added)). Furthermore, as the Fifth Circuit stated in *Stockman v. Federal Election Commission,* the Commission has the power "to conduct investigations and hearings expeditiously," 2 U.S.C. § 437d(a)(9), but FECA "does not create a deadline in which the FEC must act." 138 F.3d 144, 152 (5th Cir.1998)

The Court finds that plaintiffs have suffered only procedural injury as a result of the Commission's failure to meet the 120–day deadline. Given that Mr. Paul has not demonstrated informational injury, and that complainants to the FEC "cannot establish standing merely by asserting that the FEC failed to process its complaint in accordance with law," *Common Cause,* 108 F.3d at 419, the Court concludes that Mr. Paul has failed to satisfy the Article III standing requirement.

### III. Conclusion

As the Court concludes that Mr. Paul has failed to satisfy the Article III standing requirements and Judicial Watch is precluded from bringing suit here because it was not a party to the underlying administrative complaint, the Court grants the

Commission's motion for summary judgment and dismisses plaintiffs' case with prejudice.

SO ORDERED.