# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 14, 2013        Decided August 2, 2013

No. 12-5134

RALPH NADER,
APPELLANT

v.

FEDERAL ELECTION COMMISSION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00989)

*Oliver B. Hall* argued the cause and filed the briefs for appellant.

*Seth Nesin*, Attorney, Federal Election Commission, argued the cause for appellee. With him on the brief were *Anthony Herman*, General Counsel, *David Kolker*, Associate General Counsel, and *Adav Noti*, Acting Assistant General Counsel.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

2

GRIFFITH, *Circuit Judge*: In the wake of his 2004 run for the presidency, Ralph Nader filed an administrative complaint with the Federal Election Commission alleging that various organizations violated election laws during their efforts to keep him off the ballot. The FEC dismissed Nader's complaint. In the lawsuit that followed, the district court granted summary judgment against him and later denied his motion to alter or amend its judgment. *See Nader v. FEC*, 823 F. Supp. 2d 53 (D.D.C. 2011); *Nader v. FEC*, 854 F. Supp. 2d 30 (D.D.C. 2012). We dismiss Nader's appeal of those decisions because he lacks standing.

I

Nader brought suit under 2 U.S.C. § 437g(a)(8), which provides that "[a]ny party aggrieved by an order of the Commission dismissing a complaint . . . may file a petition with the United States District Court for the District of Columbia." We have observed that this statute "permits a private party to challenge the FEC's decision *not* to enforce" the Federal Election Campaign Act (FECA) and its attendant regulations. *Chamber of Commerce of U.S. v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995) (italics in original). But although § 437g(a)(8) creates a cause of action of considerable breadth, it "does not confer standing; it confers a right to sue upon parties who otherwise already have standing." *Common Cause v. FEC*, 108 F.3d 413, 419 (D.C. Cir. 1997). Neither the parties nor the district court addressed Nader's standing, but we asked the parties for supplemental briefing on the issue because we have "a special obligation to satisfy [ourselves] not only of [our] own jurisdiction, but also that of the lower courts in a cause under review." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (internal quotation marks omitted). Nader relies on the doctrines of competitor standing and informational standing to "satisfy the 'irreducible

constitutional minimum' of Article III standing: injury-in-fact, causation, and redressability." *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1042 (D.C. Cir. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). We hold that he lacks standing under both theories.

## II

Injury from an "illegally structured" competitive environment can give rise to competitor standing. *LaRoque v. Holder*, 650 F.3d 777, 787 (D.C. Cir. 2011) (internal quotation marks omitted). Nader alleges that he was "forced to compete" in an "illegally structured campaign environment" because his opponents were flouting election laws without suffering any consequences from the FEC. Pet'r's Supp. Br. 8. But the cases in which we have recognized competitor standing in the electoral context highlight the problem with Nader's argument: a favorable decision here will not redress the injuries he claims. In *Shays*, we held that candidates had competitor standing to challenge an FEC regulation they claimed would harm their chances *in the next election*. *See Shays v. FEC*, 414 F.3d 76, 82, 85-87 (D.C. Cir. 2005). In *LaRoque*, we held that a candidate had competitor standing to seek to enjoin the Attorney General from enforcing the Voting Rights Act in a way that would diminish the candidate's chances of victory *in an upcoming election*. *See LaRoque*, 650 F.3d at 788.

Unlike the plaintiffs in *LaRoque* and *Shays*, who successfully asserted competitor standing in the midst of ongoing campaigns, Nader seeks to compel FEC enforcement against his opponents years after the campaign has run its course. Even if the FEC were to afford Nader the relief he seeks, that outcome would not reverse the ballot-access harms that Nader alleges he suffered in 2004, or compensate him for them. *Cf. Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45

(1976) (discussing how "prospective relief will remove the harm" (internal quotation marks omitted)); *Shays*, 414 F.3d at 86 (noting that the candidates asserting competitor standing had to "anticipate" defending against potentially illegal campaign tactics); *MD Pharm., Inc. v. DEA*, 133 F.3d 8, 9, 11-12 (D.C. Cir. 1998) (discussing the relief available to a "current" pharmaceutical manufacturer seeking to have its competitor's registration revoked); *Liquid Carbonic Indus. Corp. v. FERC*, 29 F.3d 697, 701 (D.C. Cir. 1994) (noting that the administrative order at issue "will increase competition" as a prospective matter); *Freedom Republicans, Inc. v. FEC*, 13 F.3d 412, 418 (D.C. Cir. 1994) (noting that redressability is "quintessentially predictive").

Nader might have been able to establish standing as a competitor if he had shown that the FEC's determination injured his ability to fight the next election. But even though Nader has not ruled out another foray into electoral politics, his statements on the matter are too speculative to provide the basis for an injury to his competitive interests. *See McConnell v. FEC*, 540 U.S. 93, 226 (2003) (denying standing to Senator McConnell because his assertion that he might encounter unfavorable treatment under a newly-enacted statute was "too remote temporally"). In contrast to the candidates in *LaRoque* and *Shays*, who had averred that they had concrete plans to run for office in the future, *see LaRoque*, 650 F.3d at 788; *Shays*, 414 F.3d at 82, Nader has alleged only that he "may run for office again," Compl. ¶ 6. As the Supreme Court said in *Lujan*, "'some day' intentions . . . do not support a finding of the 'actual or imminent' injury that our cases require." 504 U.S. at 564.

5

III

Nader fares no better with his claim of informational standing. A plaintiff has informational standing when he alleges that he has "fail[ed] to obtain information which must be publicly disclosed pursuant to a statute." *FEC v. Akins*, 524 U.S. 11, 21 (1998). It is not enough, however, to assert that disclosure is required by law. Only if the statute grants a plaintiff a concrete interest in the information sought will he be able to assert an injury in fact. *See id.* at 24 ("Often the fact that an interest is abstract and the fact that it is widely shared go hand in hand. But their association is not invariable, and where a harm is concrete, though widely shared, the Court has found 'injury in fact.'" (citation omitted)). For instance, in *Akins*, the Supreme Court held that a group of voters had standing to argue that the FECA entitled them to information about the activities of a lobbying organization because they had an interest in evaluating candidates and outside groups. *See id.* at 21, 24-25. Similarly, in *Shays*, we held that a member of the U.S. House of Representatives had standing to argue that the FEC's disclosure regulations were denying him information owed to the public under the Bipartisan Campaign Reform Act because he had an interest in evaluating the role of outside groups in a presidential election. *See Shays v. FEC*, 528 F.3d 914, 923 (D.C. Cir. 2008).

The Supreme Court's ruling in *Akins* and our ruling in *Shays* establish that litigants who claim a right to information allege the type of concrete injury needed for standing to bring a FECA claim if the disclosure they seek is related to their informed participation in the political process. *See Akins*, 524 U.S. at 21; *Shays*, 528 F.3d at 923. Nader does not seek information to facilitate his informed participation in the political process. Instead, he seeks to force the FEC to "'get the bad guys.'" *Common Cause*, 108 F.3d at 418. His complaint

alleges that a large number of lawyers and law firms made undisclosed, in-kind contributions of legal services to the efforts of the John Kerry campaign to keep Nader's name off the ballot in numerous states. He asks the FEC to compel information from participants in the ballot contests in the hope of showing that they violated the prohibitions on undisclosed "contributions" and "expenditures" found in 2 U.S.C. §§ 441a and 441b. Because this amounts to seeking disclosure to promote law enforcement, Nader asserts an injury that is not sufficiently concrete to confer standing. *See Citizens for Responsibility and Ethics in Wash. v. FEC*, 475 F.3d 337, 341 (D.C. Cir. 2007); *Wertheimer v. FEC*, 268 F.3d 1070, 1074 (D.C. Cir. 2001); *Common Cause*, 108 F.3d at 418. And to the extent Nader seeks disclosure to gain a leg up on his opponents in other litigation, that too is sufficiently distant from the reasons that supported the decisions in *Akins* and *Shays* that we hold Nader lacks informational standing.[*]

## IV

Because Nader lacked standing, the district court lacked jurisdiction to hear his suit, and we vacate the judgment and remand the case with instructions to dismiss the case for lack of jurisdiction.

*So ordered.*

---

[*] Nader and the opponents of his inclusion on the Pennsylvania ballot have been embroiled in extensive litigation since 2004, and Nader avers that the information sought in his 2008 FEC complaint would be useful to him in those controversies. *See* Nader Aff. ¶¶ 9-17.