**NATURAL LAW PARTY OF THE UNITED STATES OF AMERICA, et al., Plaintiffs,**

v.

**FEDERAL ELECTION COMMISSION, Defendant.**

**No. CIV. A. 98–1025(ESH).**

United States District Court, District of Columbia.

Aug. 28, 2000.

William P. McGrath, Thomas O. Gorman, Washington, DC, for Plaintiff.

Laura F. Klein, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiffs, the Natural Law Party of the United States (Natural Law Party), along with Dr. John Hagelin and Dr. Mike Tompkins, the Natural Law Party's 1996 candidates for President and Vice President, bring this action seeking judicial review of the Federal Election Commission's (FEC) dismissal of their 1996 administrative complaint. In their complaint to the FEC, plaintiffs, who were excluded from participation in the 1996 presidential debates, challenged the candidate selection criteria used by the debates' staging organization—the Committee on Presidential Debates (CPD). Plaintiffs contended that the criteria used by the CPD were not "objective" as required by FEC regulations. In 1998, the FEC, finding the criteria did not violate FEC regulations, dismissed the plaintiffs' complaint. Plaintiffs now seek judicial review of the dismissal on the grounds that the agency's decision was arbitrary, capricious, or otherwise contrary to law.

Defendant has moved for summary judgment solely on the grounds that plaintiffs do not have standing to bring suit in this case. Upon review of the pleadings and the entire record herein, the Court finds that plaintiffs have standing to bring suit and defendant's motion for summary judgment is therefore denied.

## BACKGROUND

The Federal Election Campaign Act of 1971 (FECA) prohibits any corporation from making "a contribution or expenditure in connection with" any federal election. 2 U.S.C. § 441b(a). "Contributions" include "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 2 U.S.C. § 431(9)(A)(i). By regulation the term "anything of value" is defined to include "all in-kind contributions." 11 C.F.R. § 100.7(a)(1)(iii)(A).

The FEC, however, recognizing that "non-partisan debates are designed to educate and inform voters rather than to influence the nomination or election of a particular candidate," issued a regulation exempting from § 441b(a)'s coverage

funds that are expended in connection with the staging of non-partisan candidate debates. 11 C.F.R. § 100.7(b)(21). The regulation, which took effect on March 13, 1996, provides that certain non-profit organizations may stage presidential debates, provided they use "pre-established, objective criteria to determine which candidates may participate in a debate." 11 C.F.R. § 110.13(c). In addition, the regulations prohibit staging organizations from using "nomination by a political party as the sole objective criteria to determine whether to include a candidate in a debate." *Id.*

Beginning with the debates leading up to the 1988 general election, the staging of candidate debates has been the responsibility of the Committee on Presidential Debates (CPD). CPD was formed in 1987 as a private non-profit corporation for the express purpose of sponsoring presidential debates. During the 1996 election season, CPD sponsored two presidential debates and one vice presidential debate. The only candidates invited to participate in the 1996 debates were President Clinton, the Democratic nominee for President, former Senator Robert Dole, the Republican nominee, and their vice presidential running mates.

In choosing the participants for the 1996 debates, CPD selected the Democratic and Republican nominees based on "the historical prominence and sustained voter interest" in the two parties. With respect to the other, "non-major party" candidates for president, CPD's criteria for selecting candidates that had a "realistic chance of being elected" included: evidence of national organization (such as placement on the ballot in enough states to have a mathematical chance of obtaining an electoral college majority), signs of national newsworthiness (based on the professional opinions of the Washington bureau chiefs of major newspapers and news organizations), and indicators of public enthusiasm (as reflected by public opinion polls). When applying these criteria to the field of

eligible candidates, CPD found that no candidate, other than the nominees of the two major parties, stood a realistic chance of being elected. Thus, the only candidates who merited inclusion by the CPD in the 1996 debates were the two major party nominees.

## I. Case History

On September 5, 1996, one month prior to the first presidential debate, scheduled for October 6, plaintiffs filed an administrative complaint with the FEC (designated MUR 4451), alleging that the CPD's criteria for selecting candidates were not objective as required by 11 C.F.R. 110.13(c). Additionally, the complaint alleged that the CPD had violated 11 C.F.R. 110.13(c) by selecting President Clinton and Senator Dole based only on their nominations by the Democratic and Republican parties.

The complaint was filed pursuant to 2 U.S.C. § 437g(a)(1), which allows "[a]ny person who believes a violation of [FECA] has occurred" to file a complaint with the FEC. Upon receipt of a complaint, if the FEC determines by an affirmative vote of four of its members that there is "reason to believe" a violation has taken place, it must conduct an investigation of the allegations. 2 U.S.C. § 437g(a)(2). After the completion of the investigation, if the FEC determines by an affirmative vote of four members that there is "probable cause" to believe that a violation has taken place, it must attempt to reach a conciliation agreement. 2 U.S.C. § 437g(a)(4)(A)(i). If the FEC's conciliation efforts fail, it may, upon affirmative vote of four of its members, institute a civil action for relief. In the absence of an affirmative vote at any of these stages, it is the practice of the FEC to dismiss the matter under review and close the file. Pursuant to 2 U.S.C. § 437g(a)(8)(A), any person aggrieved by an order of the FEC dismissing the administrative complaint may file a petition in the United States District Court for the District of Columbia.

**38**

In addition to filing a complaint with the FEC, on September 13, 1996, plaintiffs filed a petition in the United States District Court for the District of Columbia to enjoin the CPD from using the allegedly unlawful selection criteria in determining the participants for the 1996 debates, or in the alternative, to compel the FEC to take immediate action on their administrative complaint. Four days later, the CPD issued a press release announcing that only Republican and Democratic candidates would be invited to the debates. In response to the press release, candidate Ross Perot and Perot '96, Inc. also filed an administrative complaint with the FEC, designated MUR 4473, and a complaint with this Court. The Perot and Natural Law Party's actions against the FEC were consolidated.

The FEC moved to dismiss both cases for lack of jurisdiction due to plaintiffs' failure to exhaust their administrative remedies. On October 1, 1996, following oral argument, the Honorable Thomas P. Hogan denied preliminary injunctive relief on the grounds that the FECA granted the FEC exclusive primary jurisdiction over civil claims filed under the Act.[1] The Court held that judicial action on plaintiffs' claims was precluded until the FEC ruled on the complaint or until 120 days had elapsed from the date the administrative complaint was filed without the FEC taking action.

During oral argument counsel for the FEC assured the Court that if the debates went forward without judicial relief and, indeed, even if the election occurred before the FEC completed its investigation, plaintiffs' claims would not become moot. Rather, FEC's counsel asserted, "If the Commission does not bring an action then under g(a)(8), it can be challenged. And they can bring up, you know, all challenges they want to the Commission's interpreta-

tion as applied to this situation after the Commission does its fact finding." Opp. at 10. Judge Hogan clearly considered the FEC's representations in denying plaintiffs' preliminary injunction:

> Weighing [the Court's interference in the agency's administrative process] against the plaintiffs not being able to partake in the debate or the remedy they may still pursue in their complaints to the FEC and may have a right to come back to this Court later on in the process that is provided by the Federal Election Commission Act, under 437g(a)(8), the Federal Election Commission lawyer asserted they would not be mooted out if they came back to court. What they would have lost if the FEC doesn't agree with them and they have to come to court is the opportunity to debate, but they still may be able to cure any defects in the criteria they allege the Debate Commission has used so that the next cycle would not have these defects and thereby have some relief, although not total relief. Transcript of Hearing, 10/1/96 (Morning Session), Opp. at Exh. F.

Plaintiffs appealed to the U.S. Court of Appeals for the D.C. Circuit, which affirmed the district court's dismissal on jurisdictional grounds but remanded with instructions to dismiss those counts challenging the legality of the regulations without prejudice to plaintiffs' ability to file a new lawsuit. *Perot v. FEC*, 97 F.3d 553 (D.C.Cir.1996). Affirming dismissal, the D.C. Circuit noted, when balancing the equities, that "the damage [plaintiffs] would suffer if the debates were to be held without their participation could at least be partially remedied in subsequent proceedings . . . ." *Id.* at 557.

On February 24, 1998, almost a year and a half after plaintiffs filed their administra-

---

1. The FECA states that "[e]xcept as provided in § 437g(a)(8) of this title, the power of the [FEC] to initiate civil actions under subsection (a)(6) shall be the exclusive civil remedy for the enforcement of the provisions of this Act. 2 U.S.C. § 437d(e)." *See also,* § 437c(b)(1) ("The [FEC] shall have exclusive jurisdiction with respect to the civil enforcement of such provisions.").

tive complaint, the FEC decided, by a 5–0 vote, to dismiss the complaint because the agency found no reason to believe that any violation of law had occurred.[2] In denying the complaint, the FEC concluded that the challenged selection criteria contained "exactly the sort of structure and objectivity the commission had in mind when it approved the debate regulations in 1995." As such, the CPD's candidate selection criteria were determined to comply with 11 C.F.R. § 110.13.

Upon denial of their administrative complaint, plaintiffs filed this action in April 1998, pursuant to 2 U.S.C. § 437g(a)(8)(A), seeking judicial review of the FEC's dismissal on the grounds that the agency's action was arbitrary, capricious and otherwise contrary to law. Defendant responded with the present motion for summary judgment, challenging plaintiffs' standing to bring suit in this case. Thereafter, the case was transferred to the undersigned on December 22, 1999.

On February 9, 2000, the FEC filed notice with the Court that the CPD had announced new selection criteria for the 2000 Presidential Debates. The CPD's new criteria for selecting debate participants are as follows: (1) evidence of constitutional eligibility, (2) evidence of ballot access—a candidate must have his/her name appear on enough state ballots to have at least a mathematical chance of securing an Electoral College majority in the 2000 election, and (3) indicators of electoral support—a candidate must have the support of at least 15% of the national electorate as determined by five selected national public opinion polling organizations, using the average of those organizations' most recent publicly-reported results at the time of the determination.

## II. Factual Parameters

The FECA limits judicial review of plaintiffs' claims to those alleged violations that have been administratively exhausted. *See* 2 U.S.C. § 437g(a)(8)(A).[3] Plaintiffs' standing to sue must be based upon an injury stemming from the FEC's dismissal of their administrative complaint. *See Judicial Watch, Inc. v. FEC*, 180 F.3d 277 (D.C.Cir.1999) (holding that plaintiffs lacked standing to bring suit on claims of alleged reporting violations that were not mentioned in the administrative complaint before the FEC). The Natural Law Party's administrative complaint alleged that (1) the CPD is a fundamentally bipartisan organization composed of Republicans and Democrats; (2) the CPD's 1996 debate selection criteria violated § 110.13(c) by inviting the Republican and Democratic nominees to the debates solely on the basis of their party affiliations; (3) the 1996 debate selection criteria that the CPD applied to "nonmajor candidates" violated § 110.13(c) because it was not objective; and (4) proposed media coverage of the major presidential candidates by FOX, PBS, and ABC would violate § 110.13(c)'s prohibition on campaign contributions, to the extent the candidates selected for coverage are determined by the CPD's nonobjective criteria.

**2.** The FEC made this determination despite the report and recommendation of its General Counsel, who advised that there was reason to believe that the CPD's Candidate Selection Criteria for 1996 General Election Debate Participation did not comply with 11 C.F.R. § 110.13(c); that the CPD and the Democratic and Republican campaign committees violated 2 U.S.C. § 441b(a)'s prohibition on corporate campaign contributions and expenditures; and that the CPD, the Democratic and Republican campaign committees violated 2 U.S.C. §§ 433 and 434's registration and reporting requirements for political committees. *See* General Counsel's Report, Opp. at Exh. H

**3.** "Any party aggrieved by an order of the Commission dismissing a complaint filed by such party under paragraph (1), or by a failure of the Commission to act on such complaint during the 120–day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia." 2 U.S.C. § 437g(a)(8)(A).

In their instant complaint plaintiffs allege that FEC's dismissal of MUR 4451 was arbitrary and capricious and contrary to law. They assert that the CPD's selection criteria are not objective, as required under 11 C.F.R. § 110.13, and do not qualify the CPD for safe harbor protection under 11 C.F.R. § 100.7(b)(21). Therefore, plaintiffs argue that the CPD violated 2 U.S.C. § 441b(a) by making unlawful corporate contributions to Clinton/Gore and Dole/Kemp in conjunction with the 1996 presidential election. Plaintiffs further allege that the CPD violated 2 U.S.C. §§ 433 and 444 by operating as an affiliated committee of Clinton/Gore, Dole/Kemp, the RNC and the DNC, and that those organizations, in turn, violated 2 U.S.C. § 441b(a) by knowingly accepting or receiving a prohibited corporate in-kind contribution from the CPD. Additionally, plaintiffs' opposition asserts standing based on "informational injuries" stemming from the CPD's failure to disclose information, as it would be required to do if it were held to be a "political committee" under the FECA.

■ As required by the FECA, the Court must limit its consideration of plaintiffs' claims to those which have been administratively exhausted: (1) that the CPD violated 11 C.F.R. § 110.13 by employing non-objective criteria to select candidates for the 1996 debates, and (2) the immediate consequence of such a violation—that the CPD's staging of the 1996 debates constituted a prohibited corporate contribution in violation of 2 U.S.C. § 441b(a). Likewise, in assessing plaintiffs' standing to sue, the Court can only consider injuries flowing from these two alleged violations. Because plaintiffs did not allege that the CPD functions as a political committee in their administrative complaint to the FEC, nor did they assert any violations of the reporting or registration requirements by the CPD, the RNC, the DNC, or either campaign, injuries resulting from these alleged violations, regardless of their merit, cannot be used to support standing in the present action. *See Judicial Watch,* 180 F.3d at 278 (holding that plaintiffs lacked standing to bring claims for reporting violations that were not raised in the administrative complaint).

## III. Legal Parameters

While plaintiffs' opposition addresses the issue of mootness given the fact that defendant's arguments at times seem to mesh the concepts of mootness and standing, defendant persists in its stance that its summary judgment motion is based solely upon the argument that plaintiffs lack standing to bring their claims, not that plaintiffs' claims are moot. Moreover, in a conference call on February 24, 2000, in response to questions from the Court, both parties agreed that the announcement of new CPD selection criteria for the 2000 Election has no impact on the posture of the case. According to the FEC, the announcement of new criteria bolsters their standing argument, but is not dispositive of the matter. Defendant also restated its position that the sole issue before the Court is standing, not mootness.

■ Before addressing the issue of standing, it is worth noting the conceptual differences between standing and mootness. As the Supreme Court recently explained in *Friends of Earth v. Laidlaw,* 528 U.S. 167, 120 S.Ct. 693, 710, 145 L.Ed.2d 610 (2000), "Standing doctrine functions to ensure that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake. In contrast, by the time mootness is an issue, the case has been brought and litigated, often . . . for years." Standing is determined at the time the complaint is filed, while mootness ensures that the requisite personal stake necessary at the outset of litigation continues throughout its course. *Id.* at 709. However, there are important exceptions to the mootness doctrine that distinguish it from standing. It is well settled that a defendant's voluntary cessation of a challenged practice does not moot the case, because

such a result would leave the defendant free to return to its old, allegedly illegal ways. *Id.* at 708. Thus, legal challenges to procedures affecting the conduct of an election do not become moot after the election because they are "capable of repetition yet evading review." *Moore v. Ogilvie*, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) (quoting *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911)); *see also Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) (holding that although the 1972 election was long over, the case was not moot because the issues presented and their effects on independent candidates would persist since the challenged statutes would apply to future elections), and *Johnson v. FCC*, 829 F.2d 157 (D.C.Cir.1987) (holding that although the 1984 election was over, the case was not moot since the time frame was too short to allow resolution of the litigation). In this case, the Court need not, at least at this time, address the issue of whether the adoption of the new CPD selection criteria for the 2000 Election raises the possibility of this case being moot, since defendant argues for dismissal solely on the basis that plaintiffs lack constitutional standing, which is, as noted in *Friends of Earth*, determined at the time that the suit is initiated.

## ANALYSIS

■ Section 437g(8)(a) of the FECA, which provides for judicial review of the agency's dismissal of an administrative complaint, does not automatically confer standing. Rather, it "confers a right to sue on parties who otherwise already have standing." *Common Cause v. FEC*, 108 F.3d 413, 419 (D.C.Cir.1997). The question of standing involves both constitutional limitations on federal court jurisdiction as well as prudential limitations on its

exercise. *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Standing is based upon the facts as they exist at the time the complaint is filed, and plaintiff bears the burden of proof. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To meet the constitutional requirement of standing a plaintiff must show: (1) he has suffered an injury which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the alleged injury and conduct that is fairly traceable to the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560, 112 S.Ct. 2130.

Here, the FEC challenges plaintiffs' constitutional standing on the grounds that (1) the injuries alleged by plaintiffs do not meet the injury in fact requirement of Article III; (2) plaintiffs' injuries are not fairly traceable to the FEC, but instead are the result of independent actions by third parties, specifically the CPD; and, for the same reason (3) plaintiffs' injuries cannot be effectively redressed by relief directed at the FEC.

### I. Injury in Fact

■ Plaintiffs' standing to bring suit must be based on "an injury stemming from the FEC's dismissal of [their] administrative complaint." *Judicial Watch*, 180 F.3d at 277; *see also* 2 U.S.C. § 437g(a)(8)(A). Defendant argues that plaintiffs have not established a "concrete and particularized" injury sufficient to meet the requirements of Article III standing because the 1996 debates from which Hagelin and Tompkins were excluded and the 1996 election were "long over" when the FEC denied plaintiffs' complaint in 1998.[4] Thus, according to defendants,

---

4. This delay was due to the FEC's own protracted review process. Plaintiffs' administrative complaint to the FEC was filed on September 5, 1996, one month prior to the

first presidential debate of 1996. It was denied by the FEC in 1998, almost two years later. In 1996, when plaintiffs filed a petition in this Court seeking expedited pre-debate

"any injury to plaintiffs, whether based on their exclusion from those debates or on any benefit the other candidates may have received by participating, could not have been caused by the Commission's dismissal of their administrative complaint more than a year later, and nothing can be done by the Court today to redress such past injuries." Motion at 11. In addition, defendant argues, any alleged continuing harm from the CPD's sponsorship of future debates is purely speculative because plaintiffs may not run in future elections, they might qualify for inclusion in future debates, the CPD might not sponsor future debates, or the Republican and Democratic candidates might refuse to participate in a future debate that included the Natural Law Party's candidate.

Plaintiffs allege three injuries in support of standing: (1) that they were denied the opportunity to be fairly considered for inclusion in the debates, (2) that they suffered a competitive political disadvantage relative to the major party candidates, and (3) that they suffered an informational injury due to CPD's failure to comply with the reporting and registration requirements for political committees. As previously explained, the Court cannot consider plaintiffs' claim of informational injury because they did not allege any registration or reporting violations in their administrative complaint.

■ With respect to plaintiffs' allegation that the CPD's biased selection criteria denied them the opportunity to be fairly considered for inclusion in the debates, defendant makes three arguments. First, the FEC asserts that injuries resulting from plaintiffs' exclusion from the 1996 debates cannot support a challenge to action by the FEC in 1998 because "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controver-

sy." *Los Angeles v. Lyons,* 461 U.S. 95, 103, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (holding that plaintiff injured by chokehold lacked standing to sue for injunction on use of chokeholds by police); *see also Branton v. FCC,* 993 F.2d 906 (D.C.Cir. 1993) (holding that radio listener lacked standing to challenge letter ruling by FCC refusing to take action against NPR for allegedly broadcasting obscene material in violation of 19 U.S.C. § 1464). Second, the FEC argues that any future or continuing harm that plaintiffs allege is too speculative and hypothetical and cannot qualify as the type of "actual and imminent" injury required to support standing. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. Finally, the FEC argues that governmental inaction does not qualify as an injury in fact. The Court rejects these arguments, for the acceptance of the FEC's overly narrow construction of "injury in fact" would be tantamount to shielding from judicial review many, if not all, election cases.

As argued by plaintiffs, if pre-election conduct cannot satisfy the injury-in-fact requirement for standing to challenge a post-election decision by the FEC, then given the 120 day time frame for administrative exhaustion required by the FECA, as a practical matter, the FEC could virtually insulate its decisions from judicial review by failing to take action on any complaint prior to the expiration of 120 days. Opp. at 16. As plaintiffs point out, since the election occurs in the first week of November and the presidential debates occur in mid-October, unless the FEC chooses to act sooner than 120 days from filing, an administrative complaint regarding the selection criteria or other conduct of the debates would have to be filed in early July for the complainant to have the right to commence a court action before the debates occurred. *Id.* However, in early July political parties have not yet nominated their candidates, and the selection of

review of their complaint, the FEC argued that the Court did not have jurisdiction until the administrative review process had been completed. The FEC assured the Court, how-

ever, that § 437g(a)(8) would allow plaintiffs "all [the] challenges they want to the Commission's interpretation... after the Commission does its fact finding."

debate format and participants is still two months away. Undoubtedly such a challenge by a party that had not even selected its candidate, much less been denied the opportunity to have that candidate participate in any prospective debate, could well be considered unripe, leaving plaintiffs trapped in a procedural catch–22.

Defendant does not argue that plaintiffs lack prudential standing, and, indeed, plaintiffs' claims would seem to fall squarely within the "zone of interests" to be protected by the FECA. The FECA explicitly makes corporate contributions or expenditures, including the provision of services, in connection with political elections illegal (2 U.S.C. § 441b(a)), with the limited exception of the staging of non-partisan debates. 2 U.S.C. § 431(9)(B)(ii). In order to qualify under that exception, the debates must use pre-established objective selection criteria and may not rely solely upon party affiliation. 11 C.F.R. § 110.13. Moreover, the FECA provides that "any person who believes that a violation of this act ... has occurred may file a complaint with the Commission," 2 U.S.C. § 437g(a)(1), and that "any party aggrieved by an order of the Commission dismissing a complaint ... may file a petition" in district court seeking judicial review. 2 U.S.C. § 437g(a)(1). Whether cast as a mootness or standing argument, the logical result of the FEC's reasoning would be to render § 437g(a)(1) meaningless and to permit harms capable of repetition to evade review. *See, e.g., Johnson v. FCC,* 829 F.2d at 159 n. 7 (holding that notwithstanding the fact that the election was over, the challenge of a minority party

presidential candidate to her exclusion from televised debates was not moot, as it was a controversy capable of repetition, yet evading review. "The issues properly presented, and their effects on minor-party candidacies, will persist in future elections, and within a time frame too short to allow for resolution through litigation.")

■ Past exposure to illegal conduct satisfies the injury in fact requirement where it is accompanied by continuing adverse effects. *See FEC v. Akins,* 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (holding that plaintiffs had standing to challenge FEC's denial of administrative complaint alleging informational injuries). The cases cited by defendant, *Los Angeles v. Lyons; Branton v. FCC; Renne v. Geary,* 501 U.S. 312, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991); *Animal Legal Defense Fund v. Espy,* 23 F.3d 496 (D.C.Cir.1994), and the cases cited therein,[5] are distinguishable from the present case in that all involved a single, isolated incident of allegedly illegal conduct so unlikely to be repeated that the threat of future injury was deemed too attenuated to support constitutional standing. The plaintiff in *Lyons,* who allegedly was subjected to an illegal chokehold five months earlier, lacked standing to seek an injunction against all future use of chokeholds by the Los Angeles police. The Court held that plaintiff's single experience did not establish that he was in any realistic danger that he would again be stopped for a violation by police officers who would illegally choke him. "We cannot agree that the 'odds' that Lyons would not only again be stopped for a traffic violation but would also be sub-

---

5. *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (holding that plaintiffs lacked standing where the prospect of future injury rested on the likelihood that they would again violate lawful criminal statutes, be prosecuted and tried for their offenses, and thereby be subjected once again to allegedly discriminatory sentencing procedures); *Rizzo v. Goode,* 423 U.S. 362, 372, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (holding that plaintiffs lacked standing where claim of injury rested upon "what one or a small,

unnamed minority of policemen might do to them in the future because of that unknown policeman's perception of departmental procedures"); *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969) (holding that Congressman lacked standing to seek declaratory judgment that New York statute prohibiting anonymous handbills pertaining to election campaigns was unconstitutional, where plaintiff was no longer a Congressman and was "most unlikely" to ever be subjected to the statute again).

jected to a chokehold without any provocation whatsoever are sufficient to make out a federal case for equitable relief." 461 U.S. at 108, 103 S.Ct. 1660. Likewise in *Branton,* the D.C. Circuit held that a radio listener lacked standing to challenge an FCC's letter ruling that declined to sanction the broadcast by National Public Radio of an uncensored tape recording of a John Gotti wiretap that contained foul language. The Court reasoned, "It is mere conjecture that a radio station will again broadcast, at a time when the petitioner is listening, indecencies that would be proscribed under 18 U.S.C. § 1464 (as he would have us interpret that statute). While there is, of course, some chance that somewhere, at some time, the petitioner may again be exposed to a broadcast indecency as a result of the Commission's decision, that possibility seems to us far too remote and attenuated to establish a case or controversy under Article III." 993 F.2d at 909. In *Renne v. Geary,* an election case, representatives of California political parties claiming injury to their interest in political expression from a prohibition in the California State Constitution against endorsement of candidates in local, nonpartisan elections, lacked standing to sue because their injuries were too vague and unlikely to recur. The provision at issue had never been enforced against their illegal conduct. Nor could any plaintiff allege a concrete plan to endorse a particular candidate in future elections or show any "evidence of a credible threat that § 6(b) [would] be enforced" against them. 501 U.S. at 322, 111 S.Ct. 2331. Similarly, in *Animal Legal Defense Fund v. Espy,* a former animal researcher was found to lack standing to challenge certain regulations covering the treatment of laboratory animals, based on the mere possibility that she might suffer aesthetic injury from future exposure to mistreated animals. Because the plaintiff in *Espy* conceded that she had not conducted animal research in over six years, the Court found that her intention to do so in the future was purely speculative, and any possible injuries

would take place "at some undefined future time." 23 F.3d at 500.

The harms allegedly suffered by the Natural Law Party, on the other hand, are particularized and concrete. According to plaintiffs' complaint, the CPD applied biased, non-objective criteria, in direct violation of 11 C.F.R. § 110.13(c), and as a result, plaintiffs were denied the opportunity to be fairly considered for participation in the 1996 debates. Plaintiffs complained about this alleged violation in an administrative complaint to the FEC, and the FEC not only rejected the complaint, but held that the selection criteria demonstrated "exactly the sort of structure and objectivity the commission had in mind when it approved the debate regulations in 1995." The inability to compete on an equal footing due to the application of allegedly biased criteria has been recognized in many contexts as an injury in fact sufficient to support constitutional standing. *See, e.g., Northeastern Florida Chapter v. Jacksonville,* 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (finding that general contractors had standing to challenge a city ordinance giving preferential treatment in the award of city contracts to minority-owned businesses because the "injury in fact [was] the inability to compete on an equal footing in the bidding process, not the loss of a contract"); *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) ("[P]laintiff's injury was the obstacle to their candidacy; we [do] not require any allegation that the plaintiffs would actually have been elected but for the prohibition"); *West Virginia Assoc. of Community Health Centers v. Heckler,* 734 F.2d 1570 (D.C.Cir.1984) (Community health care centers had standing to challenge calculation of block grant funding because they were injured by denial of the opportunity to compete for increased funding.)

Furthermore, in 1998, at the time the complaint was filed, which is the point at which standing is determined, there was more than a speculative possibility that

these injuries would recur.[6] Plaintiffs Hagelin and Tompkins, who were the Natural Law Party's nominees in 1992 and again in 1996, were likely to run again in the 2000 election. Indeed, by May 1999 they had declared their intention to run as candidates for the 2000 party nomination. Moore Decl. at ¶ 3. Moreover, even if Hagelin and Tompkins did not secure the nomination of the Natural Law Party, the Party itself was more than likely to field a presidential candidate in the 2000 election. Plaintiffs' firm intentions to run in the 2000 election and again be exposed to the CPD's criteria, contrasts sharply with the speculative plans of the plaintiffs in *Renne v. Geary* and *Animal Legal Defense Fund v. Espy.*

Equally unfounded is defendant's contention that plaintiffs should be denied standing on imminence grounds, since "[i]t is unsupported speculation to presume that the circumstances which led to their exclusion from the 1996 debates, such as low standing in the polls, will be the same ... in upcoming elections." Motion at 11. Defendant misconstrues plaintiffs' claim. Plaintiffs' administrative complaint challenged the objectivity of the criteria used to select candidates. Whether plaintiffs are allowed to participate in future debates, they seek to change criteria that, in their view, systematically disadvantages minor party candidates in the debate's candidate selection process. Presuming that this is true, as the Court must at this stage, application of criteria that is biased against minor party candidates increases the probability that plaintiffs will be unfairly excluded from future presidential debates, no matter what their level of popular support.

Finally, defendant's contention that an agency's failure to act is not an injury in fact was rejected by the D.C. Circuit in *Animal Legal Defense Fund v. Glickman:*

In this circuit, *Bristol–Myers Squibb Co. v. Shalala,* 91 F.3d 1493 (D.C.Cir.1996), explicitly rejected the distinction between permissive and mandatory government regulation. There the plaintiff challenged the legality of Food and Drug Administration ("FDA") regulations governing the approval of generic drugs. This court found that Bristol–Meyers Squibb ("BMS") had standing to sue, on the ground that "[i]f BMS is correct [about its claim that the FDA's regulations violate the governing statute], then it is no answer to say that the FDA is merely permitting a competitive product to enter the market and leaving the purchasing decision to the consumer." *See Telephone and Data Systems, Inc. v. FCC,* 19 F.3d 42, 47 (D.C.Cir. 1994) ("injurious private conduct is fairly traceable to the administrative action contested in the suit if that action authorized the conduct or established its legality").”

154 F.3d 426, 442 (D.C.Cir.1998) (en banc). Thus, the FEC cannot argue that plaintiffs suffer no injury from the agency's denial of their administrative complaint. Plaintiffs claim to have been harmed by the application of CPD selection criteria that allegedly violates FEC regulations. If plaintiffs are correct, which is not the issue before the Court at this time, FEC's ratification of the CPD's unlawful selection criteria causes injury to the plaintiffs in the same manner as if the FEC itself imposed the illegal criteria.

Alternatively, the Court is persuaded that plaintiffs have alleged an additional injury in fact, for they suffered a competitive political disadvantage relative to the major party candidates. According to plaintiffs, the CPD's use of biased selection criteria to exclude them from the debates caused a "relative diminution" of their political voices and an injury to their

---

6. As previously noted, defendants do not allege that the change in the CPD's selection criteria for the 2000 Election moots this case. In fact, they explicitly state that it does not, under the doctrine of conduct "capable of repetition yet evading review" articulated in *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).

ability to influence the political process. Opp. at 24. The bipartisan debates, plaintiffs argue, exaggerate the inherent advantages of the two major party candidates by "amplifying their already loud voices" to the disadvantage of minor party candidates. *Id.* Moreover, because the debate criteria were not objective within the definition of the FECA's safe harbor provision, the debates constituted a prohibited campaign contribution which was conferred on the Republican and Democratic nominees, but not on any third party candidates.

Although standing based upon political competitor status has been recognized by other circuit courts, notably the Second Circuit in *Fulani v. League of Women Voters Educ. Fund*, 882 F.2d 621, 626 (2d Cir.1989), where the Second Circuit noted, "it is beyond dispute that participation in these debates bestowed on the candidates who appeared in them some competitive advantage over their non-participating peers," the D.C. Circuit has "never completely resolved this thorny issue." *Gottlieb v. FEC*, 143 F.3d 618, 620 (D.C.Cir. 1998). In *Gottlieb v. FEC* and *Fulani v. Brady*, 935 F.2d 1324 (D.C.Cir.1991), the D.C. Circuit held that plaintiffs lacked political competitor standing, whereas in *International Association of Machinists v. FEC*, 678 F.2d 1092, 1098 (D.C.Cir.1982) (en banc), the D.C. Circuit held that a "relative diminution in [plaintiffs'] political voices—their influence in federal elections" was legally cognizable for purposes of establishing standing. Numerous courts, including the Supreme Court and the D.C. Circuit, have recognized standing for economic competitors, *see, e.g., Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 403, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987), and the D.C. Circuit has observed that political competitor cases are treated consistently with the line of cases deciding economic competitor standing. *See Gottlieb*, 143 F.3d at 621 ("Those [economic competitor] decisions also require that the plaintiff 'show that he personally competes in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit.' ") (citations omitted); *Fulani*, 935 F.2d at 1327 ("Unquestionably, there is such a concept as 'competitor standing.' That standing has been recognized in circumstances where a defendant's actions benefitted a plaintiff's competitors, and thereby caused the plaintiff's subsequent disadvantage.")

Moreover, In *Common Cause v. Bolger*, 512 F.Supp. 26 (D.D.C.1980), a three-judge court recognized that competitive disadvantage is a basis for standing where plaintiffs, a citizens' group and its members who ran for office, were competitively disadvantaged by the franking privilege accorded to incumbent members of Congress. The Court found that in order to "neutralize" the advantage that franking afforded an incumbent, the challenger "must raise substantially greater funds than he otherwise would." *Bolger*, 512 F.Supp. at 30.

By contrast, in *Fulani v. Brady*, 935 F.2d 1324 (D.C.Cir.1991), Dr. Lenora Fulani, the New Alliance Party nominee for president in 1988, was denied standing in a lawsuit against the IRS alleging competitive injuries as a result of her unlawful exclusion from the presidential debates. Fulani sought to invalidate the CPD's tax-exempt status on the grounds that it had excluded her from the 1988 debates in violation of IRS regulations governing tax-exempt organizations. In an opinion driven largely by a statutory scheme and a long line of cases hostile to the ability of litigants to attack the tax exemption of a third party, the D.C. Circuit rejected Fulani's claim of competitor standing, because she was not in a position to be granted tax-exempt status, and thus, she was not in competition for that benefit. *Id.* at 1327–1329. In *Fulani* the statutory scheme created by Congress was inconsistent with third party attacks on an organization's tax-exempt status. *Id.* at 1327. Rather, the statute limited the remedy to the entity whose tax-exempt status was at issue.

*See* 26 U.S.C. § 7428. The Court noted, however, that "if the IRS were depriving Fulani of a benefit that it afforded to others similarly placed, she might be able to challenge that action based upon her own tax liability." *Id.* at 1328. Similarly, in *Gottlieb v. FEC,* 143 F.3d at 620, plaintiff AmeriPAC lacked competitor standing to sue under 2 U.S.C. § 437g(a)(8)(A) for review of FEC's dismissal of its complaint alleging that the 1992 Clinton campaign violated the FECA by transferring private contributions to its compliance fund instead of using the money to offset its primary campaign debts. As a result, the Clinton campaign received $1.4 million in matching funds to which it was it was not entitled. The Court held that AmeriPAC could not claim standing as a "competitor" of the Clinton campaign because it was never itself in a position to receive matching funds. "Only another candidate could make such a claim." *Id.* at 621.

The instant case is readily distinguishable from both *Fulani* and *Gottlieb,* and therefore, the Court concludes that plaintiffs have a legal basis for asserting standing based on their political competitor status. First, unlike the statute in *Fulani,* the FECA specifically authorizes any party aggrieved by a violation of its provisions to file a complaint with the FEC and to bring suit in federal court if that claim is dismissed. Further, Hagelin, Tompkins, and the Natural Law Party—political candidates and their party affiliate—directly competed for the alleged benefit of participating in the presidential debates. They are direct "competitors" of the Republican and Democratic parties and their nominees, and therefore, they are unlike the plaintiffs in *Fulani* and *Gottlieb.* As such, the relative disadvantage to plaintiffs' candidacy and the injury to their interest in effectively voicing their political message provide a sufficient alternative basis to support their claim of an injury in fact.

## II. Causation

 Causation exists when a challenged agency rule authorized the third party conduct that caused plaintiff's injury, if that conduct would be illegal otherwise. *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). This Circuit has further explained that "injurious private conduct is fairly traceable to the administrative action contested in the suit if that action authorized the conduct or established its legality." *Telephone and Data Systems, Inc. v. FCC,* 19 F.3d 42, 47 (D.C.Cir.1994). Even if agency action authorizes the conduct at issue, however, causation will not exist where "one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.'" *Lujan,* 504 U.S. at 562, 112 S.Ct. 2130 (*quoting ASARCO Inc. v. Kadish,* 490 U.S. 605, 615, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989)). In cases involving the conduct of third parties, standing will be precluded when "multiple, tenuous links" connect the challenged conduct to the asserted injury. *Center for Auto Safety v. NHTSA,* 793 F.2d 1322, 1335 (D.C.Cir.1986); *but see, Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("The fact that the harm to petitioners may have resulted indirectly does not in itself preclude standing").

 Defendant, though not disputing that the FEC's regulations are a factor in the plaintiff's injuries, asserts that the CPD's ability to draft and apply its own criteria are independent, intervening causes sufficient to defeat plaintiffs' standing to sue the FEC, and based on *Fulani v. Brady,* it argues that plaintiffs cannot satisfy the causation prong. The Court disagrees.

Defendant's reliance on the dicta in *Fulani v. Brady* is misplaced. Plaintiff Lenora Fulani waged an indirect challenge to the same CPD criteria at issue here by attacking CPD's tax-exempt status. Fula-

ni alleged that but for the IRS's unlawful grant of tax exempt status, the CPD would not be able to sponsor debates, due to FEC regulation requiring that the debate sponsors be tax exempt organizations. *Fulani*, 935 F.2d at 1328–29. The D.C. Circuit found the causal link between the IRS and the plaintiff's injury too attenuated to support causation. *Id.*[7] The Court held, "the IRS's decision to provide the CPD with tax-exempt status . . . is merely one in a chain of independent causal factors necessary to achieve this injury." *Id.* at 1329. The Court found that the plaintiff's action against the IRS would not reach the true cause of her injuries because, "[w]ere the FEC to change its regulations [requiring sponsors to be tax-exempt], revocation of the CPD's tax-exempt status could have virtually no effect on the CPD's debate activities." *Id.* at 1330. The Court therefore concluded, "Fulani's claim would be addressed more appropriately under the FEC's regulation than through the Internal Revenue Code." *Id.* at 1329.[8] Of course, plaintiffs here have, as recommended by *Fulani*, brought their claim "under the FEC's regulation."

In response, defendant attempts to sustain its position by relying on the dicta in *Fulani*, where the Court suggests that in addition to the FEC, the CPD also remains an "intervening causal agent." *Id.* at 1329. For instance, the Court surmises

that the CPD could decline to sponsor future presidential debates, or that the major parties could refuse to participate in a debate that included Fulani. *Id.* The fact that the Court in *Fulani* recognized the CPD as an intervening causal agent does not, however, resolve the issue here of whether plaintiffs' injury is fairly traceable to the FEC. Obviously, as acknowledged in *Fulani*, the IRS is further removed from plaintiffs' injury than the FEC or the CPD and the lack of sufficient traceability to the IRS's grant of tax exempt status to the CPD is not dispositive with respect to the FEC, which is the very governmental body that must determine if the CPD's criteria complies with the FEC's regulations.

■ Although standing is "substantially more difficult" to prove on the issues of causation and redressability, where plaintiff's alleged injury results from the government's failure to regulate a third party, it is by no means impossible to do so. *See Lujan*, 504 U.S. at 562, 112 S.Ct. 2130. "This circuit's case law confirms the proposition that a plaintiff satisfies the causation prong of constitutional standing by establishing that the challenged agency rule permitted the activity that allegedly injured [plaintiff], when that activity would allegedly have been illegal otherwise." *Animal Legal Defense Fund*, 154 F.3d at

---

**7.** *Fulani* cited *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), as an illustration of an attenuated chain of causation insufficient to support standing. The Supreme Court found that the presence of numerous, intervening third parties made the connection between the plaintiffs' injuries and the defendant's conduct "attenuated at best." *Allen*, 468 U.S. at 757, 104 S.Ct. 3315. The independent, "numerous third parties" included: the actions of school administrators and the independent choices made by parents of children attending the public schools. *Id.* at 759, 104 S.Ct. 3315.

**8.** Similarly, in *Freedom Republicans v. FEC*, 13 F.3d 412 (D.C.Cir.1994), decided after *Fulani*, plaintiffs were found to lack standing to challenge FEC funding of political conventions, which the plaintiffs believed used ra-

cially discriminatory criteria to select convention delegates. The Court found that the plaintiffs' injury was not caused by FEC funding of conventions, but rather by the Party's own, unfettered strategic decision to choose a greater number of delegates from states with strong Republican voting records—states which were also overwhelmingly white. The Republican Party's delegate selection criteria were not necessarily dependent on the receipt of federal funds, since the "Party's practice of allocating delegates in accordance with Republican voting strength . . . preceded public convention funding by fifty-eight years." *Id.* at 418. Thus the alleged injury was not fairly traceable to any encouragement by the government, but instead appeared to be the result of decisions made by the Party without regard to funding implications. *Id.* at 419.

440–41. By attacking the FEC's approval of the CPD criteria, rather than the IRS's recognition of the CPD's tax-exempt status, plaintiffs here have moved one major step up the chain of causation and have thereby eliminated the "multiple tenuous links" that connect the challenged conduct to their alleged injury. *Center for Auto Safety,* 793 F.2d at 1335.[9] Whether the CPD-sponsored debates are legal or illegal depends upon whether they meet the FEC's criteria. The CPD's criteria must be formulated pursuant to 11 C.F.R § 110.13, which mandates that sponsoring organizations use "preestablished, objective criteria to determine which candidates may participate in a debate." As the agency charged with the enforcement and interpretation of these regulations, the FEC exercises direct control over the allegedly injurious conduct of the CPD— control that the IRS in *Fulani* lacked. *See also, Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (holding no causal link where IRS was the agency involved.) Had the FEC found the debate selection criteria in violation of its regulations, the CPD would have been forced to change the criteria or refrain from sponsoring debates.

Thus, unlike the Republican Party's long-term delegate-allocation practices, the CPD's selection criteria are not the result of "unfettered choices" made in the exercise of "broad and legitimate discretion that the courts cannot presume either to control or to predict." *Lujan,* 504 U.S at 562, 112 S.Ct. 2130 (*quoting ASARCO,* 490 U.S. at 615, 109 S.Ct. 2037). Rather, the CPD formulates candidate selection criteria subject to the review procedures set up by the FEC and judged against the regulatory criteria established in § 100.7(b)(21). Defendant's argument that the CPD is free to alter its criteria without input from the FEC is unconvincing, since the CPD is only free to alter its criteria within the parameters of § 100.7(b)(21), which requires the criteria to be objective.

▨ The CPD can only be an intervening agent if· it stops having debates, but this alone is not enough to break the chain of causation between the FEC and the plaintiffs' alleged injuries. As long as the CPD sponsors debates, it must comply with the regulations established by the FEC. Causation is defeated when a plaintiff's injury is the result of "unfettered" third party conduct. In this case, the CPD is sufficiently fettered by FEC regulation to conclude that plaintiffs' injuries are "fairly traceable" to the FEC's approval of CPD's debate selection criteria.

### III. Redressability

▨ Finally, plaintiffs must prove that there is a "substantial likelihood" that their injuries would be redressed by a favorable decision on the merits. When the plaintiffs' claim hinges, as in this case, on an agency's failure to prevent injurious third party behavior, the "fairly traceable and redressability inquiries appear to merge." *Freedom Republicans,* 13 F.3d at 418 (citing *Competitive Enterprise Inst. v. NHTSA,* 901 F.2d 107 (D.C.Cir.1990)). Despite the similarities, "causation remains inherently historical, redressability quintessentially predictive." *Id.* at 418 (citing *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). In determining redressability, the Court will ignore "speculative and hypothetical possibilities" that would frustrate judicial relief. *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). Defendant FEC contends that the plaintiffs' injuries in this case are not redressable because the 1996 debates and election cycle were over long before the complaint was

---

9. In its discussion of causation, the *Fulani* Court pointed out, "the FEC's regulation is an intervening cause—were it not for the regulation [requiring debate sponsors to be tax exempt organizations], the CPD's tax status would be relevant to its sponsorship of the debates only insofar as it facilitated the CPD's funding through tax exempt funds." 935 F.2d at 1329.

filed and because of numerous independent causal factors not within the Court's control. Once again, the Court disagrees.

Plaintiffs' challenge to the legal basis of an FEC enforcement decision is redressable by judicial review, provided the other elements of standing are satisfied. *See FEC v. Akins*, 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998). "[A] party seeking judicial relief need not show to a certainty that a favorable decision will redress his injury. A mere likelihood will do." *National Wildlife Federation v. Hodel*, 839 F.2d 694, 705 (D.C.Cir.1988). As previously stated, if the passage of the election were enough to deprive plaintiffs of standing, election cases would, as a practical matter, be unreviewable under FECA. Also, plaintiffs' injury can still be redressed by an FEC determination that the 1996 debate selection criteria was unlawful, because as long as plaintiffs run for office, they will continue to be subjected to debate selection criteria. The FEC's interpretation of its regulations as they apply to those criteria will shape the implementation of any future selection criteria.[10] In an *en banc* decision that post-dated *Fulani*, the D.C. Circuit found that plaintiffs' injuries were not rendered unredressable by the fact that the election was over by the time the case reached the Court. *Akins v. FEC*, 101 F.3d 731, 738 n. 7 (D.C.Cir.1996) (en banc), *vacated and remanded on other grounds, Federal Election Commission v. Akins*, 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998). "[A]ppellants claim that they are injured because AIPAC was permitted to avoid registering as a political committee and disclosing its past receipts and expenditures. That disclosure of past activities

would presumably affect voters in the future. If such injury were not redressable, once an election ended virtually all electoral conduct would be beyond review." *Id.*

The Court also rejects defendant's argument that it could not issue an order that would redress plaintiffs' injury due to the numerous causal factors involved. In reviewing a petitioner's challenge to the FEC's determination that an organization was not a "political committee" as defined under FECA, the D.C. Circuit addressed this very issue. It called the argument "a breathtaking attack on the legitimacy of virtually all judicial review of agency action." *Id.* at 738. All regulatory agencies enjoy some measure of enforcement discretion, but that cannot render the agency's legal decision-making unreviewable. *Id.* Plaintiffs need not demonstrate that judicial review of the FEC's interpretation will lead to the ultimate relief sought; in this case, a change in the selection criteria. As the D.C. Circuit noted, "[w]e rarely know ... whether the agency's ultimate action will be favorable to the petitioner or appellant." *Id.* at 738. Rather, "[a] remand that would leave the agency free to exercise its discretion in a proper manner, then, *could* lead to agency action that would redress petitioner's injury." *Competitive Enterprise Inst.*, 901 F.2d at 118 (emphasis added). Here, if plaintiffs prevail on the merits, a declaration that the FEC's dismissal was contrary to law would force the FEC to re-examine the challenged criteria. "Our job is limited to correcting a legal error—if error is committed—in the agency's decision." *Akins*, 101 F.3d at 738.[11]

---

10. We reiterate that defendant does not contest mootness, thus the fact that the CPD selection criteria has changed for the 2000 Election does not alter our standing analysis.

11. Defendant's hypothetical assertion that the CPD might cease sponsoring debates altogether, or alternatively, that the debates would be sponsored by a media organization or political campaign not subject to FEC regulations, or that the major party candidates might refuse to participate in debates containing minor party candidates—aside from the fact that such a wholesale discontinuation of televised debates would, in fact, redress the plaintiffs' injuries by removing the unfair advantage plaintiffs believe the debates provide to their opponents—is completely speculative and accordingly cannot be credited by the Court in deciding redressability.

## CONCLUSION

For the foregoing reasons, the Court concludes that plaintiffs have met their burden as to each element of standing, and therefore, defendant's motion for summary judgment [14–1] is DENIED.