Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued November 5, 2002      Decided February 4, 2003

No. 01-7166

AMERICAN SOCIETY FOR THE PREVENTION OF
CRUELTY TO ANIMALS, ET AL.,
APPELLANTS

v.

RINGLING BROS. AND BARNUM & BAILEY CIRCUS AND
FELD ENTERTAINMENT, INC.,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(00cv01641)

————

*Katherine Anne Meyer* argued the cause for appellants. With her on the briefs were *Eric R. Glitzenstein* and *Jonathan R. Lovvorn.*

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Harris Weinstein* argued the cause for appellees. With him on the brief were *Eugene D. Gulland, Elliott Schulder,* and *Kevin C. Newsom.*

Before: RANDOLPH and ROGERS, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: Asian elephants perform at the Ringling Bros. and Barnum & Bailey Circus. The American Society for the Prevention of Cruelty to Animals, the Animal Welfare Institute, the Fund for Animals, and Thomas Rider sued Ringling Bros. and its owner, Feld Entertainment, Inc., claiming that Asian elephants are an endangered species and that the circus mistreated its elephants in violation of the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* The only question is whether, as the district court ruled in dismissing their complaint, plaintiffs lack standing under Article III of the Constitution.

The strongest case for standing is presented by Thomas Rider. The relevant allegations in the complaint relating to him are as follows. Ringling Bros. holds circus performances in the United States and other countries. It sometimes stages events in which its Asian elephants parade along public streets. Rider worked for Ringling Bros. from June 1997 to November 1999, tending the elephant barns and working as a "handler." As a result of his work with the elephants he formed a "strong, personal attachment to these animals." Employees of Ringling Bros. beat the elephants with sharp bull hooks, kept the elephants in chains for long periods of time, and forcibly removed baby elephants from their mothers at an earlier age than they could normally be weaned in the wild. These actions have negative impacts on the elephants' behavior "wherever they perform or are exhibited." Rider has seen the elephants show stressful "stereotypic" behavior as a result. Department of Agriculture inspectors saw lesions and rope burns on the elephants. Rider left his job at Ringling Bros. because of the mistreatment of the elephants. He would like to work with the elephants again and would attempt to do so if the elephants were relocated.

Rider would also like to visit the elephants, but is unwilling to do so because he would suffer "aesthetic and emotional injury" from seeing the animals unless they are placed in a different setting or are no longer mistreated.

The complaint was brought under the citizen-suit provision of the Endangered Species Act, 16 U.S.C. § 1540(g), which allows any person to commence a civil suit to enjoin violations of the Act or its regulations. *Id.* § 1540(g)(1)(A). Plaintiffs provided written notice to the Secretary of the Interior and to Ringling Bros. sixty days before filing suit. *Id.* § 1540(g)(2)(A). They sought a declaratory judgment that Ringling Bros. violated the Act and the regulations thereunder, an injunction against future violations, forfeiture of the elephants, and other relief.

The citizen-suit provision in the Endangered Species Act, by specifying that "any person" may be a plaintiff, eliminates any prudential standing requirement. *See Bennett v. Spear*, 520 U.S. 154, 163–65 (1997). Rider still must satisfy Article III by showing that he has suffered an injury in fact, fairly traceable to the defendant's action, and capable of judicial redress. *See id.* at 167.

Rider failed to make such a showing, the district court ruled, because his exposure to the mistreatment of the elephants in the past did not cause him any present injury or threaten to cause any injury in the near future. Rider claimed that he wanted to work with the elephants again. But whether he could find such employment if Ringling Bros. were ordered to forfeit the elephants was, in the court's view, speculative. Rider's remaining arguments for standing – his general emotional upset, and his "continuing injury" from having quit his job – were insufficient for reasons unnecessary to recount. (The district court also held that the remaining individual and organizational plaintiffs lacked standing.)

We believe Rider has alleged enough to show injury in fact – that is, "an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Bennett*, 520 U.S.

at 167; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" because courts assume plaintiffs can back up their general claims with specifics at trial. *Lujan*, 504 U.S. at 561. Rider's allegations of injury fit within decisions of this court and the Supreme Court recognizing that harm to one's aesthetic interests in viewing animals may be a sufficient injury in fact. *See id.* at 562–63; *Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 (1986); *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972); *Animal Legal Def. Fund v. Glickman*, 154 F.3d 426, 432 (D.C. Cir. 1998) (en banc).

In *Glickman*, one of the plaintiffs had an "aesthetic" interest in observing animals under humane conditions. *Glickman*, 154 F.3d at 431. He regularly visited a particular zoo and saw conditions to which he objected, such as chimpanzees housed in isolation (causing social deprivation), adult bears placed in proximity to squirrel monkeys (frightening the latter), and other conditions he believed to be inhumane. *Id.* at 429–30. Given his desire and plan to visit the zoo in the future, we held that he had alleged an injury in fact. *Id.* at 431–32.

While the complaint here says the elephants are still being mistreated, continuing harm to the animals is not our main focus. It is Rider who must be suffering injury now or in the immediate future. What we have written about Rider's experience at Ringling Bros. cannot suffice. In actions for injunctive relief, harm in the past – as the district court correctly held – is not enough to establish a present controversy, or in terms of standing, an injury in fact. The question thus is whether the complaint contains enough to show some present or imminent injury to Rider. We believe it does.

In *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–82 (2000), the injury to the organizational plaintiffs stemmed from the defendant's discharging pollutants into a river. Some of plaintiffs' members had used the river and its environs for recreation in the past.

Because of the pollution they had not gone back, but would if the discharges ceased. The Court found injury in fact: the discharges affected the members' "recreational, aesthetic, and economic interests" and the members' conditional statements about visiting the river again could not be dismissed as mere speculation. *Id.* at 184.

To generalize from *Glickman* and *Laidlaw*, an injury in fact can be found when a defendant adversely affects a plaintiff's enjoyment of flora or fauna, which the plaintiff wishes to enjoy again upon the cessation of the defendant's actions. Rider says he became attached to the elephants when he worked with them and would like to "visit" them again "so that he can continue his personal relationship with them, and enjoy observing them." Exactly what sort of "visit" he has in mind is not spelled out. We can be sure that the prospect of his working in the elephant barns again is nil. But we believe a fair construction of his allegation encompasses Rider's attending the circus as any member of the public would, by purchasing a ticket and viewing the show from the audience. From this vantage point he might observe either direct physical manifestations of the alleged mistreatment of the elephants, such as lesions, or detect negative effects on the animals' behavior, which he claims he would recognize based on his experience working at Ringling Bros. This takes his claim out of the category of a generalized interest in ensuring the enforcement of the law, which would be insufficient to establish Article III standing. *See Common Cause v. Fed. Election Comm'n*, 108 F.3d 413, 418 (D.C. Cir. 1997). And it distinguishes him from other members of the public, including those who attend the circus.

We recognize that Rider's allegations differ from those in *Glickman* in one respect. Like the *Glickman* plaintiff who had regularly gone to a zoo, Rider claims to have witnessed inhumane treatment of animals while he was working for the circus. But unlike the *Glickman* plaintiff, if Rider returned to the circus as a member of the audience there is nothing to indicate that he would be in a position to witness the mistreatment again. Even so, we cannot see why this should matter as far as his standing is concerned. The plaintiffs in

*Laidlaw* may not have seen the pollutants being discharged into the river; it was sufficient that they detected the effects of the pollution on the ecology. Here, the complaint alleges mistreatment and Rider says he is able to detect the effects, even if he does not directly observe the mistreatment. Given the posture of the case, we must assume the truth of the claims.

We think *Humane Society v. Babbitt*, 46 F.3d 93 (D.C. Cir. 1995), in which we found the plaintiffs lacked standing, is different from this case. In *Babbitt*, which reached us at the summary judgment stage, we expressed doubt whether a plaintiff had alleged an injury in fact based on her lost opportunity to study Asian elephants generally and her inability to observe a particular Asian elephant when the zoo removed it. *Babbitt*, 46 F.3d at 97–100. (We ultimately held that the causation and redressability requirements were not satisfied. *Id.* at 100.) Rider's alleged injuries are different. Unlike the plaintiff in *Babbitt*, Rider alleged a strong personal attachment to the elephants. *Id*. at 97. In *Babbitt*, we left open the question whether "emotional attachment to a particular animal . . . could form the predicate of a claim of injury." *Id.* at 98. We answer that question in the affirmative today. A person may derive great pleasure from visiting a certain river; the pleasure may be described as an emotional attachment stemming from the river's pristine beauty. *Laidlaw*, 528 U.S. at 182–83. We can see no principled distinction between the injury that person suffers when discharges begin polluting the river and the injury Rider allegedly suffers from the mistreatment of the elephants to which he became emotionally attached during his tenure at Ringling Bros. – both are part of the aesthetic injury. *Contrast Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 485–86 (1982). *Babbitt* also noted that removing one of the Asian elephants did not appear to threaten the plaintiff's opportunity to observe the species because three others were still at the zoo. *Babbitt*, 46 F.3d at 97. Rider's personal relationship with the elephants eliminates the concern, expressed in *Babbitt*, that a plaintiff who could continue to observe several animals of a particular species might not be injured if one of the animals were

removed. Rider has also stated a desire to visit the elephants, making his injury present or imminent; the plaintiff in *Babbitt* did not assert an intent to return to the zoo to observe elephants and thus had not alleged an imminent injury. *Id.* These factors, coupled with the lesser standard required to show standing on a motion to dismiss, distinguish this case from *Babbitt*.

For these reasons, Rider has made a sufficient allegation of injury in fact to satisfy the first element of the standing analysis.

The second element in Article III standing is a causal connection between the injury and the defendant's conduct – "the injury must be fairly traceable to the challenged action of the defendant." *Bennett*, 520 U.S. at 167. It is unquestioned that Ringling Bros.'s alleged actions – inhumane treatment of the elephants – are the source of the aesthetic injuries that Rider alleges.

The third element for standing is redressability. A plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bennett*, 520 U.S. at 167. Rider seeks two forms of relief – an injunction that would stop Ringling Bros. from continuing to mistreat the elephants in violation of the Endangered Species Act and its regulations and an order directing Ringling Bros. to forfeit possession of the elephants. If Rider wins the case, we must assume – because the case is at the pleading stage – that his injury will be resolved. Although the complaint does not come right out and say that an end to mistreatment will bring about a change in the elephants' behavior, this is a fair inference. It may also be inferred that if Rider wins, the elephants will no longer exhibit the physical effects of mistreatment. Rider then will be able to attend the circus without any aesthetic injury. It follows that Rider has alleged enough to show that his injuries will likely be redressed if he is successful on the merits.

Based upon his desire to visit the elephants (which we must assume might include attending a performance of the circus),

his experience with the elephants, his alleged ability to recognize the effects of mistreatment, and what an injunction would accomplish, Rider's allegations are sufficient to withstand a motion to dismiss for lack of standing. We therefore do not decide whether the other plaintiffs have standing because each of them is seeking relief identical to what Rider seeks. *See, e.g.*, *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981); *Glickman*, 154 F.3d at 445.

The judgment of the district court dismissing the complaint for lack of standing is therefore reversed.

*So ordered.*