# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 19, 2006        Decided January 12, 2007

No. 06-5014

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,
APPELLANT

v.

FEDERAL ELECTION COMMISSION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 04cv02145)

*Anne L. Weismann* argued the cause for appellant. With her
on the briefs was *Melanie Sloan*.

*David B. Kolker*, Attorney, Federal Election Commission,
argued the cause for appellee. With him on the brief were
*Richard B. Bader*, Associate General Counsel, and *Vivien Clair*,
Attorney.

Before: RANDOLPH, GARLAND and GRIFFITH, *Circuit
Judges*.

Opinion for the court filed by *Circuit Judge* RANDOLPH.

Opinion concurring in the judgment filed by *Circuit Judge* GARLAND.

RANDOLPH, *Circuit Judge*: This is an appeal from an order of the district court granting summary judgment in favor of the Federal Election Commission. Citizens for Responsibility and Ethics in Washington (CREW) sought judicial review of the Commission's dismissal of CREW's administrative complaint. The issue is whether CREW has standing to challenge the Commission's decision.

I.

During the 2004 presidential election campaign, Grover Norquist gave Ken Mehlman a list of conservative activists in thirty-seven states. Norquist is president of Americans for Tax Reform, a § 501(c)(3) tax-exempt corporation. Mehlman was campaign manager of Bush-Cheney '04. A reporter from The Washington Post witnessed the transaction and reported it. Relying on the newspaper story, CREW filed a complaint with the Commission alleging that the list constituted an in-kind corporate campaign contribution in violation of the Federal Election Campaign Act, 2 U.S.C. § 441b(a); that if, instead, the list constituted a personal contribution by Norquist, its value exceeded his $2,000 contribution limit under § 441a(a)(1)(A); and that Bush-Cheney '04 violated § 434(a)-(b) by failing to report the list as a contribution. The complaint named as respondents Norquist, Americans for Tax Reform, Mehlman, and Bush-Cheney '04. As relief, CREW requested that the Commission "conduct an investigation into these allegations, declare the respondents to have violated the federal campaign finance laws, impose sanctions appropriate to these violations and take such further action as may be appropriate." Bush-Cheney '04 and Americans for Tax Reform defended on the grounds that the materials Norquist provided to Mehlman were

not confidential, were accessible from publicly available sources including Americans for Tax Reform's website, and did not represent a campaign contribution because they had no market value.

The Commission's General Counsel sought to determine whether the list constituted a "contribution" – that is, a "gift, subscription, loan, advance, or deposit of money or anything of value" made for the purpose of influencing a federal election. 2 U.S.C. § 431(8)(A)(i). He requested that the administrative respondents provide a copy of the materials given to Mehlman. Bush-Cheney '04 submitted one version of the documents; Americans for Tax Reform submitted a slightly different version, explaining that it had updated the materials since providing them to Mehlman and had not kept a copy of the original list. The materials, which are described in great detail in the General Counsel's Report to the Commission, included a map of thirty-six states in which "Center-Right Coalition" meetings had taken place, descriptions of some of the meetings, and lists of attendees. The General Counsel recommended to the Commission that it find reason to believe that the transaction constituted a prohibited corporate contribution under § 441b(a), find no reason to believe that the transaction constituted an excessive personal contribution exceeding $2,000 under § 441a(a)(1)(A), and find reason to believe that Bush-Cheney '04 violated § 434(b) by failing to report the in-kind contribution.

Although the General Counsel concluded that the materials had some value, the value was "small," the list had only a limited "impact," and amounted only to a "limited contribution" to Bush-Cheney '04. He determined that the materials would be of little assistance in organizing Bush-Cheney '04's conservative base: the individuals identified in the list were doubtless already aware of and supportive of the President's re-

election campaign; with few exceptions, the materials focused on state and local issues; and Bush-Cheney '04 already had some of the information and portions of it were posted on Americans for Tax Reform's website. "[I]n order to devote the Commission's limited resources to more significant cases," the General Counsel therefore recommended that the "Commission exercise its prosecutorial discretion and take no further action and close the file in this matter."

The Commission voted to adopt the General Counsel's recommendations, but did not issue a separate joint statement.[1] We therefore infer that the General Counsel's report sets forth the Commission's rationale for ending its inquiry into CREW's administrative complaint. *See, e.g.*, *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 38 & n.19 (1981); *Nat'l Rifle Ass'n of Am. v. FEC*, 854 F.2d 1330, 1333 n.7 (D.C. Cir. 1988). The Commission notified CREW of its action, provided a copy of the General Counsel's report, and stated that materials relating to the matter would be placed on the public record within thirty days, *see* 11 C.F.R. § 111.20(a), which they were.

After the election, CREW filed this action pursuant to 2 U.S.C. § 437g(a)(8)(A), which states that "Any party aggrieved by an order of the Commission dismissing a complaint filed by such party . . . may file a petition with the United States District Court for the District of Columbia." CREW's complaint sought a declaration that the Commission's "failure to require reporting

---

[1] Commissioner Michael E. Toner issued a personal "Statement of Reasons," concluding that CREW's complaint "should have been dismissed based on prosecutorial discretion with no reason-to-believe finding." *See* FEC, Statement of Reasons (Nov. 23, 2004) (Toner, Comm'r), http://eqs.nictusa.com/eqs/searcheqs (enter 5409 as case number).

and disclosure of the value of the master contact list . . . was contrary to law." The district court, Bates, J., granted summary judgment in favor of the Commission on the ground that CREW lacked standing to litigate its claims. The court reasoned that CREW suffered no injury in fact because the precise dollar value of the list would not be useful either to voters generally or to CREW in particular. *See Citizens for Responsibility and Ethics in Wash. v. FEC*, 401 F. Supp. 2d 115, 120-22 (D.D.C. 2005). Moreover, because CREW's administrative complaint did not seek to discover the precise dollar value of the list, the court found that CREW's "endeavor is tantamount to seeking enforcement of the law." *Id.* at 122.

## II.

To establish standing, CREW claims to have suffered the requisite injury in fact, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), because it is being deprived of one piece of information about the list not posted on the Commission's website – namely, what the list was worth. One might wonder why the case is not moot. The election is over; President Bush is constitutionally barred from running again; and Vice President Cheney has announced that he will not run. Unlike the plaintiffs in *FEC v. Akins*, 524 U.S. 11 (1998), who wanted certain information so that they could make an informed choice among candidates in future elections, CREW cannot vote; it has no members who vote; and because it is a § 501(c)(3) corporation under the Internal Revenue Code, it cannot engage in partisan political activity.

CREW claims it is still suffering an injury because if it knew the actual value of the list, it could better inform the public of the relationship between Norquist and the Bush Administration. *See* Br. for Appellant 17-18. This seems highly attenuated. CREW describes itself as an organization devoted

to protecting "the rights of citizens to be informed about the activities of government officials and to ensuring the integrity of those officials." *Id.* at ii. But any citizen who wants to learn the details of the transaction between Norquist and Mehlman can do so by visiting the Commission's website, which contains the list and a good deal more. This is why the district court ruled, 401 F. Supp. 2d at 121, that the list's precise value – if that could be determined – would add only a trifle to the store of information about the transaction already publicly available. *See Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231 (1992) ("[T]he venerable maxim *de minimis non curat lex* ('the law cares not for trifles') is part of the established background of legal principles against which all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept.").

Like the district court, we see other problems with the remaining two prerequisites to standing – causation and redressability, *see Lujan*, 504 U.S. at 560-61. CREW complains about the Commission's "failure to require [Bush Cheney '04] to comply with [the Act's] reporting and disclosure requirements." Br. for Appellant 18. But the Commission has no authority to order anyone to report anything. If, after a "reason to believe" determination, the Commission finds "probable cause" to believe that someone has violated the Act, it must attempt to negotiate a conciliation agreement. *See* 2 U.S.C. § 437g(a)(4)(A)(i). Nothing in the Act requires that disclosure of information be part of such an agreement. If negotiation proves unsuccessful, the Commission may decide to bring an enforcement action in federal district court. *See id.* § 437g(a)(6)(A). There is no requirement that the Commission seek, or that a court grant, a particular form of redress in such an action.

The Commission also tells us that it does not place precise values on in-kind contributions. That is the responsibility of the person or entity who must report the contribution. *See Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 145 (D.D.C. 2005). The Commission's responsibility is to disclose what others report. *See id.*; 2 U.S.C. §§ 434(a)(11)-(12), 437g(a). CREW does not question the Commission's position on this score.

Short of a Commission enforcement action in district court, further administrative proceedings will thus boot CREW nothing. At this stage, judicial review of the Commission's refusal to act on complaints is limited to correcting errors of law. *See* 2 U.S.C. § 437g(a)(8). Yet CREW agrees with the Commission's reason-to-believe determinations and expresses satisfaction that it received "a publicly disclosed ruling that the administrative respondents violated the law." Br. for Appellant 22. CREW must disagree with the Commission's judgment that its resources were better employed on other, more important matters. But we do not know what legal principle CREW thinks the Commission thereby violated, or in terms of standing, how CREW's alleged harm is "fairly traceable" to a Commission determination resting "upon an improper legal ground." *Akins*, 524 U.S. at 25. No one contends that the Commission must bring actions in court on every administrative complaint. The Supreme Court in *Akins* recognized that the Commission, like other Executive agencies, retains prosecutorial discretion. *See id*; *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156-59 (D.C. Cir. 2006).

Many similar considerations underlie our decision in *Common Cause v. FEC*, 108 F.3d 413 (D.C. Cir. 1997) (per curiam), on which the Commission relies. *See* Cass R. Sunstein, *Informational Regulation and Informational Standing*: *Akins and Beyond*, 147 U. PA. L. REV. 613, 658-59 (1999). Common Cause's administrative complaint charged that a national party's

committee and its state counterpart made contributions and expenditures in a state senatorial election campaign exceeding the legal limits and then failed to report them. After an investigation, the General Counsel recommended that the Commission find probable cause. The Commission deadlocked and therefore dismissed the complaint. *Common Cause*, 108 F.3d at 418. To establish its standing to sue, Common Cause claimed that the injury to it and its members consisted of the lack of information that would have been provided if the Commission had pursued its complaint, filed an action in court, and won a court order requiring the national and state committees to report the contributions and expenditures. Unlike CREW, Common Cause was a membership organization and its members were voters. Yet we dismissed the case for lack of standing.

The important consideration was that Common Cause's administrative complaint sought, as relief, only "the investigation and imposition of monetary penalties . . .." *Id.* CREW's request to the Commission also sought an investigation, a declaration that respondents had violated federal campaign finance laws, and the imposition of "sanctions." As we have already mentioned, the Commission does not itself have coercive power. And even if it did, CREW never mentioned its desire to have the list precisely valued and never hinted that this is what it had in mind as a "sanction." It is of no consequence that CREW also requested in its administrative complaint "such further action as may be appropriate." *Lujan* specifically demanded a showing of injury that is "concrete and particularized," not one that is indirectly inferred. 504 U.S. at 560. Given the precedent established in *Common Cause* and the

lack of any meaningful distinction between that case and this one, we must hold that CREW lacks standing.[2]

*Affirmed.*

---

[2] *See LaShawn v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996) (en banc). CREW seeks to avoid this result on the basis that *Common Cause* "must yield" to the Supreme Court's later decision in *Akins*. Br. for Appellant 22. The short answer is that we have never overruled *Common Cause* and we have applied its holding and rationale after *Akins*. *See Judicial Watch, Inc. v. FEC*, 180 F.3d 277, 278 (D.C. Cir. 1999); *Wertheimer v. FEC*, 268 F.3d 1070, 1074 (D.C. Cir. 2001); *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 317 F. 3d 334, 337 (D.C. Cir. 2003).

GARLAND, *Circuit Judge*, concurring in the judgment:

I agree with the court that there is no meaningful distinction between this case and *Common Cause v. FEC*, 108 F.3d 413 (D.C. Cir. 1997), and on that ground conclude that CREW lacks standing to litigate its challenge to the Commission's decision.